## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA
Plaintiff,

v.

[1] RAFAEL JOAQUIN BELTRE BELTRE,
   a.k.a. Joaquin, Rafael Berte, Rafael Betre,
[2] WILFREDO BLANCO DIAZ,
   a.k.a. Willi, Wilfredo Blanco Dias, Chicuelo,
[3] JORGE LUIS MENDEZ,
   a.k.a. Daniel,
[4] WILSON ANTONIO HERNANDEZ
   FERNANDEZ,
[5] PELAGIO DEL ROSARIO,
[6] PAULINA PINEDA CASTILLO,
[7] JUAN GABRIEL RODRIGUEZ COLON,
   a.k.a. El Gordo,
[8] VIVIAN SEVERINO,
   a.k.a. Vivia Ceverino,
[9] DOMINGO ANTONIO RAMIREZ,
[10] VICTOR MANUEL RIVERA RAMIREZ,
[11] JULIO DE LA CRUZ GARCIA,
[12] MILEDYS ANTONIA BELTRE
   BELTRE,
[13] MIGUEL A. GUZMAN NIEVES,
   a.k.a. Jose Garcia, Joselito Garcia,
[14] JOSE SERGIO GARCIA RAMIREZ,
   a.k.a. Samuel Negron Caraballo,
   Sergio Ramires, Oscar Martinez, Jr.,
   Oscar Munos, Pablo Barradas,
[15] ALMA YESENIA GARCIA RAMIREZ,
   a.k.a. Mayra Santiago Soto, Maira
   Santiago,
[16] VIDAL CONTRERAS GALICIA,
   a.k.a. Vidal Contreras Guvera,
[17] ANGEL MANUEL PEREA SALAZAR,
   a.k.a. Luis Enrique Plaza Del Valle,
   Martillo,
[18] MOISES LARA CEBALLOS,
   a.k.a. Angel Luis Rodriguez Hernandez,
   Serbando Lara,
[19] EMILIO LUNA MATA,
   a.k.a. Manuel Quero Mendez, Rogelio

**INDICTMENT**

Criminal No. 11- **589 (GAG)**

Violation:
Title 18, <u>United States Code</u>, Section
   1028(f), (b)(1)(A) & (B) and (b)(5),
   and (c)(1) & (3)

(One Count and Forfeiture)



United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 2

    Quero Mendez, Roberto Marquez Prada,
[20] EDUARDO LNU,
    a.k.a. Omar Verdugo Lozana, Guatemala,
[21] FNU LNU,
    a.k.a. Mario Angel Kuidlan Trinidad,
[22] ROSA MARIA CORRAL,
    a.k.a. Rosie, Rosy,
[23] RIGOBERTO J. MIRANDA, JR.,
    a.k.a. Ricco Miranda, Jr., Don Ricco,
[24] ISMAEL ALVARO LOPEZ RANGEL,
    a.k.a. Armando Trevino, Ricardo Omar
    Morales Bigas,
[25] FNU LNU,
    a.k.a. Maria Cotto Diaz,
[26] ARMANDO BELTRE FIGUEREO,
    a.k.a. Wilson De Leon, Wilson De Leon
    Francis,
[27] MANUEL RUIZ AGUILERA,
    a.k.a. Emmanuel Ramos Vasquez,
[28] CELESTINA MENDEZ PEREZ,
[29] JUAN QUERO MENDEZ,
    a.k.a. Yoshafat Arriaga Duar, Junior
    Pimentel Valle, Ramon, Luis Gonzalez,
[30] DARCIA RAMIREZ SEGURA,
[31] FNU LNU,
    a.k.a. Cesar Pizarro,
[32] CARMEN AMADA BELTRE,
    a.k.a. Carman Amada Guerrero Mejia,
[33] WARQUIN BELTRE MEDINA,
    a.k.a. Damian Martinez Aponte,
[34] ARMANDO LNU
    a.k.a. Benigno Martinez,
[35] RAFAEL RIVERA FIGUEROA,
[36] ALONZO RAMOS PABLO,
    a.k.a. Rafael Calderon Virella,
[37] GERARDO RANGEL ROJAS,
    a.k.a. Ivan Lara Rojas,
[38] MARTINA MONTERO DE ORTIZ,
    a.k.a. Martha Ortiz, Martina Montero
    Ortiz, Martina Montero Encaranacion,
[39] DANIEL APARICIO LARA,
    a.k.a. Cacho, Eric Rodriguez, Ramiro Lara,

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 3

[40] FNU LNU,
    a.k.a. Angel Huertas Santana,
[41] ADONIS RAMIREZ SEGURA,
[42] VICTOR COLON ROSARIO,
[43] ALEXIS BELTRE BELTRE,
[44] FNU LNU,
    a.k.a. Orlando Guzman Garcia, Orlando
    Garcia Guzman,
[45] ARELIS ABREU RAMOS
    a.k.a. Kathy, Mirna Lee Ortiz, Judy
    Nalasco,
[46] ANGEL A. LUGO NIEVES,
[47] LUIS RAFAEL RODRIGUEZ,
    a.k.a. Ralph,
[48] JOSE ARMANDO PAVON SALAZAR,
[49] FNU LNU,
    a.k.a. Deryel Camara Calderon,
[50] FNU LNU,
    a.k.a. Juan Antonio Reyes Quiles,

Defendants.

---

**THE GRAND JURY CHARGES:**

## COUNT ONE
18 USC Sec. 1028(f) and (b)(1)
(Conspiracy to Possess, Produce, and Transfer Identification Documents)

1.    Beginning in at least April 2009, the exact date being unknown to the Grand Jury,

and continuing through in or about December 2011, in the District of Puerto Rico and elsewhere,

Defendants: **[1] RAFAEL JOAQUIN BELTRE BELTRE, [2] WILFREDO BLANCO**

**DIAZ, [3] JORGE LUIS MENDEZ, [4] WILSON ANTONIO HERNANDEZ**

**FERNANDEZ, [5] PELAGIO DEL ROSARIO, [6] PAULINA PINEDA CASTILLO, [7]**

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 4

JUAN GABRIEL RODRIGUEZ COLON, [8] VIVIAN SEVERINO, [9] DOMINGO

ANTONIO RAMIREZ, [10] VICTOR MANUEL RIVERA RAMIREZ, [11] JULIO DE

LA CRUZ GARCIA, [12] MILEDYS ANTONIA BELTRE BELTRE, [13] MIGUEL A.

GUZMAN NIEVES, [14] JOSE SERGIO GARCIA RAMIREZ, [15] ALMA YESENIA

GARCIA RAMIREZ, [16] VIDAL CONTRERAS GALICIA, [17] ANGEL MANUEL

PEREA SALAZAR, [18] MOISES LARA CEBALLOS, [19] EMILIO LUNA MATA, [20]

EDUARDO LNU (a.k.a. Omar Verdugo Lozana, a.k.a. Guatemala), [21] FNU LNU (a.k.a.

Mario Angel Kuidlan Trinidad), [22] ROSA MARIA CORRAL, [23] RIGOBERTO J.

MIRANDA, JR., [24] ISMAEL ALVARO LOPEZ RANGEL, [25] FNU LNU (a.k.a. Maria

Cotto Diaz), [26] ARMANDO BELTRE FIGUEREO, [27] MANUEL RUIZ AGUILERA,

[28] CELESTINA MENDEZ PEREZ, [29] JUAN QUERO MENDEZ, [30] DARCIA

RAMIREZ SEGURA, [31] FNU LNU (a.k.a. Cesar Pizarro), [32] CARMEN AMADA

BELTRE, [33] WARQUIN BELTRE MEDINA, [34] ARMANDO LNU (a.k.a. Benigno

Martinez), [35] RAFAEL RIVERA FIGUEROA, [36] ALONZO RAMOS PABLO, [37]

GERARDO RANGEL ROJAS, [38] MARTINA MONTERO DE ORTIZ, [39] DANIEL

APARICIO LARA, [40] FNU LNU (a.k.a. Angel Huertas Santana), [41] ADONIS

RAMIREZ SEGURA, [42] VICTOR COLON ROSARIO, [43] ALEXIS BELTRE

BELTRE, [44] FNU LNU (a.k.a. Orlando Guzman Garcia, a.k.a. Orlando Garcia

Guzman), [45] ARELIS ABREU RAMOS, [46] ANGEL A. LUGO NIEVES, [47] LUIS

RAFAEL RODRIGUEZ, [48] JOSE ARMANDO PAVON SALAZAR, [49] FNU LNU

(a.k.a. Deryel Camara Calderon), [50] FNU LNU (a.k.a. Juan Antonio Reyes Quiles), did

4

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 5

knowingly combine, conspire, confederate, and agree with each other, and with persons known

and unknown to the Grand Jury, to commit the following offenses:

      a.   produce without lawful authority an identification document (namely, a Social

Security card, birth certificate, and/or driver's license) and false identification document

(namely, a birth certificate and/or driver's license), in violation of Title 18, United States Code,

Section 1028(a)(1) and (b)(1)(A);

      b.   knowingly possess with intent to transfer unlawfully five or more identification

documents not issued lawfully to the defendant, or false identification documents, in violation of

Title 18, United States Code, Section 1028(a)(3) and (b)(1)(B); and

      c.   knowingly transfer, possess, and use, without lawful authority, a means of

identification of another person with intent to commit, and to aid and abet, and in connection

with, unlawful activity that constitutes a violation of federal law, including fraud relating to

Social Security cards and numbers (Title 42, United States Code, Section 408) and false

personation of a U.S. citizen (Title 18, United States Code, Section 911), in violation of Title 18,

United States Code, Section 1028(a)(7) and (b)(1)(A) & (B).

### Trafficked Puerto Rican Identities and Identity Documents

    2.     The Defendants unlawfully possessed and transferred the following:

      a.  Puerto Rican Identities:  The Defendants sold personal identifying information

(such as the name, date of birth, and Social Security number ("SSN")) pertaining to real Puerto

Rican U.S. citizens.

      b.  Unlawful Document Sets:  The Defendants sold government-issued identity documents, including Government of Puerto Rico-issued birth certificates and corresponding U.S. Social Security cards (both pertaining to the same Puerto Rican person).  These two identity documents (for the same Puerto Rican person), as a set, will be referred to herein as "Unlawful Document Sets."

      c.  Unlawful Documents:  The Defendants also sold identity documents individually (i.e., not in a matching set).  When sold in this manner, such documents will be referred to herein as "Unlawful Documents."  Examples of such documents include fraudulent driver's licenses and Puerto Rico voter registration cards.

**Roles in the Operation**

    3.    At all times relevant to this Indictment, the Defendants discussed below held one or more of the following primary roles in furtherance of the conspiracy:

      a.  Savarona Supplier:  The Defendants referred to below as "Savarona Suppliers" were located in and around the Savarona area of Caguas, Puerto Rico, and unlawfully acquired and supplied identification documents and identifying information to others located in Puerto Rico and elsewhere.

      b.  Identity Broker:  The Defendants referred to below as "Identity Brokers" unlawfully acquired and distributed identification documents to customers.

      c.  Money Runner:  The Defendants referred to below as "Money Runners" retrieved cash payments for unlawful identity documents via money transmitters such as Western Union.

      d.  <u>Mail Runner</u>:  The Defendants referred to below as "Mail Runners" accepted or sent parcels containing unlawful identity documents through the U.S. Mail.

      e.  <u>Look-out</u>:  The Defendant referred to below as a "Look-out" notified co-conspirators of law enforcement operations and the suspected monitoring of their illicit activities.

      f.  <u>DMV Runner</u>:  The Defendant referred to below as a "DMV Runner" assisted customers of Identity Brokers in fraudulently obtaining legitimate identification documents from a State bureau of motor vehicles, using Puerto Rican identities that the customer had obtained from the Identity Broker.

### The Defendants' Trafficking Operation

      4.    The conspirators trafficked Puerto Rican identities, Unlawful Document Sets, and Unlawful Documents to undocumented aliens and others residing within the United States.

      a.  The Savarona Suppliers obtained Unlawful Document Sets as well as fraudulently-manufactured State driver's licenses, Puerto Rico voter registration cards, and other identity- and identification-related documents.  The Identity Brokers in the various cities/states solicited customers (generally undocumented aliens).  The Identity Brokers quoted a price— about $700 to $2500 for an Unlawful Document Set (and more for a driver's license or voter card)—and required payment of about $400 to $1300 up front.  The Identity Brokers then placed an order for the identity documents (on behalf of the customers) with the Savarona Suppliers by making coded telephone calls to the suppliers and asking for "shirts"/"uniforms"/ "clothes"/"skirts" (for women)/"pants" (for men)—which refer to the identity documents—in a certain "size" (which referred to the age of the identity sought by the customer).   The

conspirators frequently confirmed sender names/addresses, money transfer control numbers

("MTCNs") (a unique number identifying a particular wire transfer), and trafficked identities via

text messaging.

      b.  The Savarona Suppliers generally requested that the Identity Brokers send the

customer's initial payment—through a money transfer service such as Western Union or

MoneyGram—to a person whose name would be provided to the Identity Broker by the

Savarona Supplier.  Once the Identity Broker remitted the money through wire transfer (on

behalf of a customer), he or she generally contacted the Savarona Supplier and provided him or

her with the MTCN.  The Savarona Supplier retrieved the payment from the money transfer

service and then sent the identity documents to the Identity Broker using U.S. Express, Priority,

or regular mail.  Various Money and Mail Runners sent or received money and mail parcels.

      c.  The Savarona Supplier generally requested that the Identity Broker contact him or

her once the Identity Broker received the identity documents in the mail.  In certain instances,

while the parcel was in transit, the Savarona Supplier would call a U.S. Postal Service ("USPS")

phone number in order to track the delivery status of the U.S. Mail parcel.

      d.  In certain instances, the Savarona Suppliers traded with or bought/sold documents

from/to each other in order to fill a document order.  The conspirators were very aware that the

customers wanted document orders to be filled quickly and, thus, often used Express or Priority

Mail.

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 9

     e.   Once the Identity Broker received the identity documents, he or she delivered the documents to the customer and obtained a second payment. The Identity Broker generally kept this second payment for him or herself as profit.

     f.   Some Identity Brokers assumed a Puerto Rican identity themselves, and used that real person's identity in connection with this identity and document trafficking operation.

     g.   The customers generally obtained these identity documents in order to pretend to be a Puerto Rican U.S. citizen and used the identity documents to obtain additional identification documents (such as legitimate State driver's licenses, with the assistance of DMV Runners) and to obtain employment. Some customers obtained the documents to commit financial fraud and attempted to obtain a U.S. passport.

     5.   <u>The Defendants</u>: The following is a list of the Defendants, their respective primary roles (although the Defendants also engaged in other roles at times), and the locations in which they operated:

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 10

| Location | Conspiracy Member | Primary Role |
|---|---|---|
| Caguas, PR | • RAFAEL JOAQUIN BELTRE BELTRE ("JOAQUIN BELTRE") | • Savarona Supplier |
| | • WILFREDO BLANCO DIAZ ("WILFREDO") | • Savarona Supplier |
| | • JORGE LUIS MENDEZ ("DANIEL MENDEZ") | • Savarona Supplier |
| | • WILSON ANTONIO HERNANDEZ FERNANDEZ ("WILSON") | • Savarona Supplier |
| | • PELAGIO DEL ROSARIO ("PELAGIO") | • Savarona Supplier |
| | • PAULINA PINEDA CASTILLO ("PINEDA") | • Savarona Supplier |
| | • JUAN GABRIEL RODRIGUEZ COLON ("JUAN GABRIEL") | • Money Runner/ Mail Runner |
| | • VIVIAN SEVERINO ("SEVERINO") | • Money Runner |
| | • DOMINGO ANTONIO RAMIREZ ("DOMINGO") | • Money Runner |
| | • VICTOR MANUEL RIVERA RAMIREZ ("VICTOR RIVERA") | • Money Runner |
| | • JULIO DE LA CRUZ GARCIA ("DE LA CRUZ") | • Money Runner |
| | • MILEDYS ANTONIA BELTRE BELTRE ("MILEDYS BELTRE") | • Money Runner/ Look-Out |
| | • MIGUEL A. GUZMAN NIEVES ("MIGUEL GUZMAN") | • Mail Runner |
| Rockford, IL | • JOSE SERGIO GARCIA RAMIREZ ("SERGIO GARCIA") | • Identity Broker |
| | • ALMA YESENIA GARCIA RAMIREZ ("ALMA GARCIA") | • Money Runner/ Mail Runner |
| Indianapolis, IN | • VIDAL CONTRERAS GALICIA ("CONTRERAS") | • Identity Broker |
| DeKalb, IL | • ANGEL MANUEL PEREA SALAZAR ("PEREA") | • Identity Broker |
| Columbus/ Seymour, IN | • MOISES LARA CEBALLOS ("MOISES LARA") | • Identity Broker |
| | • EMILIO LUNA MATA ("EMILIO LUNA") | • Identity Broker |
| | • EDUARDO LNU (a.k.a. Omar Verdugo Lozana) ("EDUARDO LNU") | • Identity Broker/ Money Runner |
| | • FNU LNU (a.k.a. Mario Angel Kuidlan Trinidad) ("TRINIDAD") | • Identity Broker |
| | • ROSA MARIA CORRAL ("CORRAL") | • Identity Broker |
| | • RIGOBERTO J. MIRANDA JR. ("DON RICCO") | • DMV Runner |
| Aurora, IL | • ISMAEL ALVARO LOPEZ RANGEL ("TREVINO") | • Identity Broker |
| Hartford, CT | • FNU LNU (a.k.a. "Maria Cotto Diaz") ("MARIA COTTO") | • Identity Broker |
| | • ARMANDO BELTRE FIGUEREO ("BELTRE FIGUEREO") | • Money Runner/ Mail Runner |
| Clewiston, FL | • MANUEL RUIZ AGUILERA ("MANUEL RUIZ") | • Identity Broker |
| | • CELESTINA MENDEZ PEREZ ("CELESTINA MENDEZ") | • Identity Broker |

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 11

| Lilburn/ Norcross, GA | • JUAN QUERO MENDEZ ("JUAN QUERO") | • Identity Broker |
|---|---|---|
| Salisbury, MD | • DARCIA RAMIREZ SEGURA ("DARCIA") | • Identity Broker |
| Columbus, OH | • ADONIS RAMIREZ SEGURA ("ADONIS")<br>• VICTOR COLON ROSARIO ("VICTOR COLON") | • Identity Broker<br>• Identity Broker |
| Fairfield, OH | • ALEXIS BELTRE BELTRE ("ALEXIS BELTRE") | • Identity Broker |
| Dorchester, MA | • FNU LNU (a.k.a. Cesar Pizarro) ("CESAR PIZARRO") | • Identity Broker |
| Lawrence, MA | • CARMEN AMADA BELTRE ("CARMEN BELTRE")<br>• WARQUIN BELTRE MEDINA ("WARQUIN BELTRE") | • Identity Broker<br>• Mail Runner |
| Salem, MA | • ARMANDO LNU (a.k.a. Benigno Martinez) ("BENIGNO MARTINEZ") | • Identity Broker |
| Worcester, MA | • RAFAEL RIVERA FIGUEROA ("RAFAEL RIVERA") | • Identity Broker |
| Grand Rapids, MI | • ALONZO RAMOS PABLO ("ALONZO RAMOS") | • Identity Broker |
| Nebraska City, NE | • GERARDO RANGEL ROJAS ("ROJAS") | • Identity Broker |
| Elizabeth, NJ | • MARTINA MONTERO DE ORTIZ ("MARTINA MONTERO") | • Identity Broker |
| Burlington, NC | • DANIEL APARICIO LARA ("APARICIO LARA") | • Identity Broker |
| Hickory, NC | • FNU LNU (a.k.a. Angel Huertas Santana) ("ANGEL HUERTAS") | • Identity Broker |
| Hazleton, PA | • FNU LNU (a.k.a. Orlando Guzman Garcia) ("ORLANDO") | • Identity Broker |
| Philadelphia, PA | • ARELIS ABREU RAMOS ("ARELIS ABREU")<br>• ANGEL A. LUGO NIEVES ("ANGEL LUGO")<br>• LUIS RAFAEL RODRIGUEZ ("LUIS RODRIGUEZ") | • Identity Broker<br>• Identity Broker<br>• Money Runner |
| Houston, TX | • JOSE ARMANDO PAVON SALAZAR ("JOSE PAVON")<br>• FNU LNU (a.k.a. Deryel Camara Calderon) ("DERYEL CAMARA") | • Identity Broker<br>• Identity Broker |
| Abingdon, VA | • FNU LNU (a.k.a. Juan Antonio Reyes Quiles) ("JUAN REYES") | • Identity Broker |

6.    Cooperating Witnesses:  At times relevant to this Indictment, there were five

cooperating witnesses (hereinafter "CW-1," "CW-2," "CW-3," "CW-4," and "CW-5") who

primarily purported to be identity document customers of one or more of the Defendants.

11

**United States v. Rafael Joaquin Beltre Beltre et al.**
Indictment
Page 12

7.     <u>Undercover Agents</u>:   At times relevant to this Indictment, there were four

undercover law enforcement agents (hereinafter "UCA-1," "UCA-2," "UCA-3," and "UCA-4")

who purported to be either Identity Brokers with customers requiring identity documents, or

customers themselves.

## Objects of the Conspiracy

8.     The objects of the conspiracy included the following:

a.   Obtaining money and enriching the members and associates of the conspiracy

through the trafficking of Puerto Rican identities, Unlawful Document Sets, and Unlawful

Documents;

b.   Obtaining personal identifying information and identity documents of real people

and selling them for profit as Unlawful Document Sets and Unlawful Documents to individuals

residing in the United States;

c.   Concealing and disguising proceeds of the conspiracy's unlawful activities; and

d.   Strengthening and expanding the relationships of the members and associates of

the conspiracy by, among other things, maintaining and enlarging a market in the continental

United States for Puerto Rican identities, Unlawful Document Sets, and Unlawful Documents.

## Manner and Means of the Conspiracy

9.     In furtherance of the conspiracy, the Defendants and others unknown to the Grand

Jury:

a.   Trafficked Puerto Rican identities, Unlawful Document Sets, and Unlawful

Documents from Puerto Rico to various cities in the continental United States;

12

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 13

b. Obtained personal identifying information of real people, including names, dates of birth, and SSNs;

c. Purchased personal identifying information of real people, including names, dates of birth, and SSNs;

d. Acquired Unlawful Document Sets and Unlawful Documents of real people, and transferred and/or sold such Unlawful Document Sets and Unlawful Documents to co-conspirators and others;

e. Used telephone conversations and text messaging to traffic Puerto Rican identities, Unlawful Document Sets, and Unlawful Documents;

f. Provided identifying information and photos of customers via U.S. Mail, telephones, and in-person;

g. Mailed parcels to or from Puerto Rico that contained Unlawful Document Sets and Unlawful Documents;

h. Used fictitious sender names, sender addresses, or recipient names on mail parcels;

i. Contacted the U.S. Postal Service to ascertain the delivery status of U.S. Mail parcels (that contained Unlawful Document Sets and Unlawful Documents);

j. Assumed Puerto Rican identities and used Unlawful Document Sets or Unlawful Documents themselves;

   k. Exchanged old, worn, invalidated, or ineffective Unlawful Document Sets and/or

Unlawful Documents for newer or different Unlawful Document Sets and/or Unlawful

Documents;

   l. Checked the criminal histories of the Puerto Rican identities being trafficked;

   m. Provided notice to co-conspirators of law enforcement operations and the

suspected monitoring of their illicit activities;

   n. Assisted customers in obtaining and attempting to obtain State driver's licenses

and identification cards as well as U.S. passports using the Puerto Rican identities, Unlawful

Document Sets, and Unlawful Documents; and

   o. Funneled proceeds through a variety of methods, including Western Union wire

transfers, to various individuals within and outside of the United States.

  10. In furtherance of the conspiracy, the Defendants engaged in the activities set forth

in paragraph 9 above in and around the following locations:  Puerto Rico, Illinois, Indiana,

Connecticut, Florida, Georgia, Maryland, Massachusetts, Michigan, Missouri, Nebraska, New

Jersey, North Carolina, Ohio, Pennsylvania, Texas, and Virginia.

### Specific Examples of the Manner and Means of the Conspiracy

  11. At all times relevant to this Indictment, all telephone calls, text messages and

conversations were primarily in the Spanish language.

  12. In furtherance of the conspiracy, the Defendants engaged in one or more of the

activities set forth in paragraph 9 above while in or around one of the locations identified in

paragraph 10 above.  Paragraphs 13 through 37 below further describe some of these activities

and where they occurred.

## Document Trafficking Involving Caguas, Puerto Rico and Rockford, Illinois

13.     In furtherance of the conspiracy, in Caguas, Puerto Rico and Rockford, Illinois,

defendants SERGIO GARCIA, JOAQUIN BELTRE, WILSON, SEVERINO, VICTOR

RIVERA, DOMINGO, MILEDYS BELTRE (the sister of JOAQUIN BELTRE), and ALMA

GARCIA (the sister of SERGIO GARCIA) engaged in one or more of the activities set forth in

paragraph 9 above, including the following:

a.   Sale of Five Unlawful Document Sets (August 2010):

i.     August 11, 2010:  On or about August 11, 2010, defendant SERGIO

GARCIA met with UCA-1 in Rockford, Illinois to sell five Unlawful Document Sets to UCA-1.

During the meeting, defendant SERGIO GARCIA accepted $2,500 from UCA-1 as a down

payment for the five Unlawful Document Sets.  On or about August 11, 2010, defendant ALMA

GARCIA, using her alias "Mayra Santiago," wired $1,875 to "RAFAEL BELTRE" in Caguas,

Puerto Rico to initiate the mailing of those Unlawful Document Sets from Puerto Rico to Illinois.

ii.     August 17, 2010:  On or about August 17, 2010, defendant ALMA

GARCIA received a U.S. Mail parcel (EG 202255057 US) that was mailed from "Rafael Bellre"

in Caguas, Puerto Rico to defendant ALMA GARCIA's alias, "Maira Santiago," in Crystal Lake,

Illinois.  Defendant ALMA GARCIA signed in her alias, "Mayra Santiago," when accepting this

U.S. Mail parcel, thus seeking to conceal her true identity.

      iii.      August 20, 2010:  On or about August 20, 2010, SERGIO GARCIA met with UCA-1 at ALMA GARCIA's apartment located in Crystal Lake, Illinois, at which time defendant SERGIO GARCIA provided UCA-1 with a U.S. Mail envelope that contained five Unlawful Document Sets.  Defendant SERGIO GARCIA accepted $2,700 from UCA-1 as the balance payment due for the five Unlawful Document Sets.

      b.    Sale of Twenty Unlawful Document Sets (August to September 2010):  On or about August 25, 2010, defendant SERGIO GARCIA agreed to sell twenty Unlawful Document Sets to UCA-1.  On or about August 25, 2010, SERGIO GARCIA arranged for the payment for these Unlawful Document Sets to Puerto Rico:  (i) at a Western Union money transfer location in Rockford, Illinois, defendant SERGIO GARCIA directed UCA-1 to wire $1,500 to defendant DOMINGO ANTONIO RAMIREZ in Puerto Rico as partial payment for the documents; (ii) defendant SERGIO GARCIA, using his alias "Samuel Caraballo," wired $2,000 from a Western Union location in Illinois to defendant WILSON HERNANDEZ in Caguas as partial payment; (iii) defendant ALMA GARCIA, using her alias "Mayra Santiago," also wired $2,000 from a Western Union location in Illinois to "Nelson DeLeon Figueroa" in Caguas as partial payment; and (iv) defendant SERGIO GARCIA told UCA-1 in substance and in part that SERGIO GARCIA would have an additional $2,500 wired from Crystal Lake, Illinois to Puerto Rico. SERGIO GARCIA caused conspirators in Caguas, Puerto Rico to mail the twenty Unlawful Document Sets to him in Illinois.  On or about September 17, 2010, defendant SERGIO GARCIA provided twenty Unlawful Document Sets to UCA-1.  During this meeting, defendant

SERGIO GARCIA accepted a $10,000 cash payment from UCA-1 as the balance due for the

twenty Unlawful Document Sets.

      c.   Sale of Three Unlawful Document Sets (September to October 2010): On or

about September 17, 2010, defendant SERGIO GARCIA agreed to sell three Unlawful

Document Sets to UCA-1 which would be mailed to Indiana. On or about October 7, 2010,

defendant SERGIO GARCIA, using his alias "Samuel Caraballo," wired $1,125 via Western

Union to defendant VIVIAN SEVERINO in Caguas as partial payment for the three Unlawful

Document Sets. On or about October 13, 2010, defendant SERGIO GARCIA accepted $4,000 in

cash from UCA-1 as payment for the documents.

      d.   Sale of Unlawful Document Set Purportedly with No Criminal History (October
         to December 2010):

      i.     October 15, 2010 and November 11, 2010: On or about October 15, 2010

and on or about November 11, 2010, defendant SERGIO GARCIA represented to UCA-1 that he

could obtain for UCA-1 identity documents of individuals that did not have criminal histories.

      ii.    November 18, 2010: On or about November 18, 2010, defendant

SERGIO GARCIA accepted $3,500 from UCA-1 as a down payment for one Unlawful

Document Set containing documents from an individual that had no criminal history. Defendant

SERGIO GARCIA also agreed to contact his associates in Puerto Rico to see if UCA-1 could

return an older/discolored Unlawful Document that defendant SERGIO GARCIA had previously

sold to UCA-1 for a newer Unlawful Document.

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 18

      iii.      <u>November 22, 2010</u>:  On or about November 22, 2010, defendant SERGIO GARCIA, using his alias, "Samuel Caraballo," wired $1,125 via Western Union from Rockford, Illinois to defendant VIVIAN SEVERINO in Caguas, Puerto Rico.  On or about November 23, 2010, co-conspirators caused a U.S. Mail parcel (EG 059515743 US) which contained two Unlawful Document Sets to be mailed from Caguas, Puerto Rico to "A.C.", defendant SERGIO GARCIA's purported common-law wife, in Rockford, Illinois.  On or about November 26, 2010, "A.C." signed for this U.S. Mail parcel.

      iv.      <u>December 7, 2010</u>:  On or about December 7, 2010, defendant SERGIO GARCIA provided to UCA-1 identity documents that he represented pertained to an individual that had no criminal history.

      e.   <u>Exchange of Unlawful Document (December 2010 to January 2011)</u>

      i.      <u>December 7, 2010</u>:  On or about December 7, 2010, defendant SERGIO GARCIA also provided to UCA-1 an Unlawful Document to replace the older/discolored Unlawful Document that defendant SERGIO GARCIA had sold to UCA-1 on or about September 17, 2010, as part of the twenty Unlawful Document Sets.

      ii.      <u>December 10, 2010</u>:  On or about December 10, 2010, defendant SERGIO GARCIA, using his alias "Samuel N. Caraballo," wired $775 from a Western Union location in Illinois to "Rafael Beltre" in Caguas.

      iii.      <u>December 23, 2010</u>:  On or about December 23, 2010, defendant SERGIO GARCIA sent a text message to UCA-1's telephone, providing the name of the person to whom UCA-1 should return the Unlawful Document Set, namely, an individual with the initials "J.C."

On or about January 6, 2011, defendant SERGIO GARCIA accepted a U.S. Mail parcel mailed by UCA-1 and addressed to "J.C.," which contained one Social Security card (in the name of an individual with the initials "N.G."). On the same day, defendant SERGIO GARCIA sent a text message to UCA-1's telephone, confirming that the U.S. Mail parcel had arrived but that the corresponding birth certificate was not contained in the parcel.

   iv.  January 13, 2011: On or about January 13, 2011, defendant SERGIO GARCIA accepted a U.S. Mail parcel (ER 4992274619 US) addressed to "J.C.," containing a Puerto Rico birth certificate (in the same name as the individual referenced in paragraph 13-e-iii with an additional surname, "N.G.C.") that UCA-1 had mailed to "J.C." On or about January 13, 2011, defendant ALMA GARCIA spoke with UCA-1 over the telephone about the birth certificate that UCA-1 had returned to defendant SERGIO GARCIA.

   f. Introduction to JOAQUIN BELTRE for $10,000 (March 10, 2011):

   i.  On or about March 10, 2011, defendant SERGIO GARCIA introduced via telephone CW-1 located in Illinois to his document supplier in Puerto Rico, JOAQUIN BELTRE, for a fee of $10,000. Defendant SERGIO GARCIA instructed CW-1 on how to place document orders and stated that JOAQUIN BELTRE would sell identity documents to CW-1 for approximately $400 per Unlawful Document Set. SERGIO GARCIA assured CW-1 that JOAQUIN BELTRE would exchange identity documents that CW-1 purchased if CW-1 had any problems with them. SERGIO GARCIA explained that once he/she ordered documents from JOAQUIN BELTRE, he/she must send payment by wire transfer and then inform JOAQUIN BELTRE of the MTCN.

ii.      During CW-1's conversation with JOAQUIN BELTRE, JOAQUIN

BELTRE instructed him/her on how to order documents, namely to use coded words such as

"skirts" to refer to identity documents for women and "pants" to refer to identity documents for

men.  In the same telephone conversation, JOAQUIN BELTRE took an order from CW-1 for

four Unlawful Document Sets.  JOAQUIN BELTRE told CW-1 that he would text him/her the

name of the person to whom CW-1 should send payment via wire transfer.  JOAQUIN BELTRE

subsequently sent a text message to CW-1 which read, "Vivian Severino".

iii.      SERGIO GARCIA, CW-1, and CW-2 drove together to a Western Union

location in Rockford, Illinois, to wire payment to VIVIAN SEVERINO per JOAQUIN

BELTRE's instructions.  SERGIO GARCIA filled out the Western Union form for the CWs and

CWs wired $1,600 to defendant VIVIAN SEVERINO in Puerto Rico.  JOAQUIN BELTRE

received the MTCN of the wire transfer payment for the identity documents over the telephone

and SEVERINO retrieved the wire transfer money, $1,600 in cash, in Puerto Rico.

iv.      SERGIO GARCIA accepted $10,000 in cash from CWs which he had

demanded as payment for the introduction to his supplier, JOAQUIN BELTRE.

v.      March 11 and 12, 2011:  On or about March 11, 2011, defendant

JOAQUIN BELTRE informed CW-1 that he had received the above-referenced payment from

CW-1 for the identity documents and obtained from CW-1 an address to which he would mail

the identity documents.  On or about March 11, 2011, co-conspirators unknown to the Grand

Jury caused a U.S. Mail parcel (EG 567887780 US) to be mailed from Caguas, Puerto Rico to

Crystal Lake, Illinois that contained four Unlawful Document Sets (two male, two female).  On

or about March 12, 2011, JOAQUIN BELTRE confirmed with CW-1 that he/she had received

the identity documents.

g.  Sale of Three Unlawful Document Sets (May 2011)

i.  May 17 and May 18, 2011:  On or about May 17, 2011, SERGIO

GARCIA told UCA-1 via telephone that the price for identity documents was $750 per Unlawful

Document Set but if the UCA-1 ordered three or more Unlawful Document Sets, the price would

be $700 per Unlawful Document Set.  The following day, SERGIO GARCIA agreed to sell three

Unlawful Document Sets to UCA-1 for $2,100.

ii.  May 18, 2011:  On or about May 18, 2011, defendant SERGIO GARCIA

asked defendant JOAQUIN BELTRE whether JOAQUIN BELTRE would sell him three

Unlawful Document Sets for $1,050.  Defendant JOAQUIN BELTRE texted the name

"Domingo Ramirez" as the person to whom SERGIO GARCIA should send the $1,050.

SERGIO GARCIA told ALMA GARCIA (his sister) to wire $1,050 to the name that SERGIO

GARCIA would text to her.  Defendant ALMA GARCIA, using her alias "Mayra Santiago,"

wired $1,050 to DOMINGO RAMIREZ in Caguas, Puerto Rico via Western Union.  Defendant

ALMA GARCIA informed SERGIO GARCIA that she had wired payment to DOMINGO

RAMIREZ.

iii.  May 19, 2011:  On or about May 19, 2011, defendants JOAQUIN

BELTRE and DOMINGO RAMIREZ picked up the $1,050 that ALMA GARCIA had sent on

behalf of SERGIO GARCIA at a money transfer location in Puerto Rico.  Defendant JOAQUIN

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 22

BELTRE confirmed with SERGIO GARCIA that he had picked up the money for the identity

documents.

iv.    May 20, 2011: On or about May 20, 2011, MILEDYS BELTRE called

JOAQUIN BELTRE and provided him with the location of a "patrol car."

## Document Trafficking Involving Caguas, Puerto Rico and Indianapolis, Indiana

14.    In furtherance of the conspiracy, defendants VIDAL CONTRERAS, SERGIO

GARCIA, and JOAQUIN BELTRE engaged in one or more of the activities set forth in

paragraph 9 above, including the following:

a.    November 2010: In or about November 2010, defendant SERGIO GARCIA

introduced CW-2 to defendant CONTRERAS, an associate of defendant SERGIO GARCIA in

Indiana who could help CW-2 obtain identity documents. On or about November 22, 2010,

defendant CONTRERAS contacted CW-2 by telephone and represented that he would sell CW-2

Unlawful Document Sets for about $1,000 apiece. Defendant SERGIO GARCIA told CW-2 that

it only would take defendant CONTRERAS a few days to obtain the identity documents for CW-

2.

b.    November 23, 2010: On or about November 23, 2010, JOAQUIN BELTRE

caused a parcel containing three Unlawful Document Sets to be mailed from Caguas, Puerto

Rico to CONTRERAS in Indiana. The sender's name on the parcel was Jose Garcia, an alias of

MIGUEL GUZMAN, and the sender address was on Dr. Rufo Calle, Caguas, Puerto Rico, an

address associated with JOAQUIN BELTRE. The recipient address was incomplete and the

parcel was ultimately not delivered. On or about December 2, 2010, defendant CONTRERAS

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 23

met with CW-1, CW-2, and UCA-2 and informed them that the documents had not yet arrived

because the "guy" addressed the parcel incorrectly.

      c.  December 16 and 17, 2010: On or about December 16, 2010, defendant

CONTRERAS accepted delivery of a U.S. Mail parcel containing three Unlawful Document

Sets. JOAQUIN BELTRE caused the parcel to be mailed from Caguas, Puerto Rico to defendant

CONTRERAS in Indianapolis, Indiana. On or about December 17, 2010, defendant

CONTRERAS informed CW-2 that the previously ordered identity documents had arrived.

      d.  December 22, 2010: On or about December 22, 2010, defendant CONTRERAS

met with CW-2 and UCA-1 in Indianapolis, Indiana and sold the identity documents to CW-2

and UCA-1 in exchange for $3,000 cash.

**Document Trafficking Involving Caguas, Puerto Rico and DeKalb, Illinois**

      15.    In furtherance of the conspiracy, defendants ANGEL MANUEL PEREA

SALAZAR, JOAQUIN BELTRE, and EMILIO LUNA engaged in one or more of the activities

set forth in paragraph 9 above, including the following:

      a.  March 18, 2011: On or about March 18, 2011, PEREA obtained an Illinois

driver's license at a Department of Motor Vehicles office using the name, date of birth, and

Social Security number of his alias, "Luis E. Plaza."

      b.  May 31, 2011: On or about May 31, 2011, JOAQUIN BELTRE caused a U.S.

Express Mail parcel (EG 201075986 US) containing one Unlawful Document Set to be sent to

"Angel Parea" in DeKalb, Illinois from Caguas, Puerto Rico.

<u>United States v. Rafael Joaquin Beltre Beltre et al.</u>
Indictment
Page 24

      c.  <u>June 16, 2011</u>:  On or about June 16, 2011, PEREA accepted delivery of a parcel addressed to "Luis Plaza" in DeKalb, Illinois, with a return address in Caguas, Puerto Rico, signing for the parcel in the name of "Luis Plaza."  The parcel contained two Unlawful Document Sets, in the names of a woman with the initials "E.C.A." and a man with the initials "E.T.G."  After the delivery, PEREA called EMILIO LUNA.

      d.  <u>July 7, 2011</u>:  On or about July 7, 2011, Cooperating Customer 1 (hereinafter "CC-1") applied for an Illinois driver's license at a Department of Motor Vehicles office in Aurora, Illinois, using identity documents and the personal identifying information for a man with the initials "E.T.G.," which CC-1 purchased from PEREA.

      e.  <u>July 25, 2011</u>:  On or about July 25, 2011, PEREA agreed to locate identity documents for a "friend" of CC-1.  PEREA asked CC-1 if he knew of any females interested in buying identification documents because PEREA had an Unlawful Document Set for a 43-year-old female that he was willing to sell for $1,000.   PEREA stated to CC-1 that he was willing to accept $1,500 as a down payment for one male and one female Unlawful Document Set.

      f.  <u>July 26, 2011</u>:  On or about July 26, 2011, PEREA sold CC-1 and CW-1 two Unlawful Document Sets for $1,950, one of which was the female Document Set with the initials "E.C.A." referenced above.

<u>United States v. Rafael Joaquin Beltre Beltre et al.</u>
Indictment
Page 25

## Document Trafficking Involving Caguas, Puerto Rico and Columbus/Seymour, Indiana

16.    In furtherance of the conspiracy, defendants MOISES LARA, EMILIO LUNA, EDUARDO LNU, TRINIDAD, MIGUEL GUZMAN, DANIEL MENDEZ, DE LA CRUZ, JOAQUIN BELTRE, ROSA CORRAL and DON RICCO engaged in one or more of the activities set forth in paragraph 9 above, including the following:

MOISES LARA

a.    <u>January 23, 2009</u>:  On or about January 23, 2009, MOISES LARA obtained an Indiana identity document at a Bureau of Motor Vehicles office in Seymour, Indiana using the name, date of birth, and Social Security number of his alias, "Angel Luis Rodriguez Hernandez."

b.    <u>May 19 and 23, 2011</u>:  On or about May 19, 2011, defendant JOAQUIN BELTRE mailed a U.S. Mail parcel (EG 202273617 US) from Caguas, Puerto Rico to "Angel Rodrigue" in Seymour, Indiana that contained five Unlawful Document Sets.  On or about May 23, 2011, defendant MOISES LARA accepted delivery of this U.S. Mail parcel and signed for it using his alias, "Angel Rodriguez."

c.    <u>May 23, 2011</u>: On or about May 23, 2011, defendant JOAQUIN BELTRE and defendant DANIEL MENDEZ communicated regarding a Puerto Rican identity with the initials "A.J.F.H."

d.    <u>June 17, 2011</u>: On or about June 17, 2011, defendant JOAQUIN BELTRE sent a text message which included the personal identifying information for an individual with the initials "J.S.G.R."

e. <u>July 7 and 9, 2011</u>: On or about July 7, 2011, defendant MOISES LARA sent a text message to defendant JOAQUIN BELTRE about a money wire transfer that was a payment for identity documents. That same day, a U.S. Mail parcel (EM 552241615 US) which contained five Unlawful Document Sets (including documents pertaining to an individual with the initials "A.J.F.H" and an individual with the initials "J.S.G.R.") was mailed from Caguas, Puerto Rico to an individual with the initials "O.C." at an apartment on Highlawn Avenue in Seymour, Indiana. The parcel was scheduled for delivery on July 8, 2011, but on or about July 9, 2011, defendant MOISES LARA caused a text message to be sent to defendant JOAQUIN BELTRE indicating that the parcel mailed to MOISES LARA had not arrived yet in Seymour, Indiana. On or about July 13, 2011, the parcel arrived at its destination in Seymour, Indiana.

EMILIO LUNA

f. <u>May 21 and June 1, 2011</u>: On or about May 21, 2011, defendant EMILIO LUNA spoke with defendant JOAQUIN BELTRE about ordering and making a down payment on identity documents that bore the name "Sonia." On or about June 1, 2011, a U.S. Mail parcel (EG 202279742 US) which contained identity documents bearing the name "Sonia" was mailed from Caguas, Puerto Rico to "EMILIO LUNA" at an apartment on Highlawn Avenue in Seymour, Indiana.

g. <u>June 22, 2011</u>: On or about June 22, 2011, in a recorded telephone conversation, defendant EMILIO LUNA provided an MTCN to defendant JOAQUIN BELTRE and stated that Omar Verdugo [an alias of EDUARDO LNU] would be sending payment. Defendant EMILIO LUNA further inquired where defendant JOAQUIN BELTRE would be sending an identity

document order for a male customer.  On or about June 23, 2011, DE LA CRUZ attempted to

pick up a wire transfer payment in Puerto Rico that had been sent by Omar Verdugo [an alias of

EDUARDO LNU] for JOAQUIN BELTRE.

### EMILIO LUNA, EDUARDO LNU, and TRINIDAD

h.   January 21, 2011:  On or about January 21, 2011, defendant TRINIDAD, using

his alias "Mario Trinidad" obtained a driver's license from an Indiana Bureau of Motor Vehicles

office in Columbus, Indiana.

i.   July 31 and August 9, 2011:  Between on or about July 31, 2011 and on or about

August 9, 2011, defendant EMILIO LUNA engaged in a series of conversations and text

messages with defendants JOAQUIN BELTRE, EDUARDO LNU, and TRINIDAD regarding

the purchase and shipment of identity documents.

j.   August 1, 2011:  On or about August 1, 2011, defendant EDUARDO LNU called

defendant EMILIO LUNA wherein defendant EDUARDO LNU mentioned that he is overdue to

"deliver a little card" and defendant EMILIO LUNA questioned him about a pending money

transfer.  They proceeded to confirm the ages of the documents that defendant EDUARDO LNU

ordered from defendant EMILIO LUNA.  Defendant EMILIO LUNA asked in substance and in

part, "And the ones you ordered from me, what ages are they?"  Defendant EDUARDO LNU

replied, "From twenty-four to twenty-six."

k.   August 2, 2011:  On or about August 2, 2011, TRINIDAD telephoned defendant

EMILIO LUNA to ask whether his order had been placed and defendant EMILIO LUNA

informed him that a deposit must be paid first.  Later that day, defendant EDUARDO LNU

called defendant EMILIO LUNA to confirm that the money was wired to defendant JOAQUIN

BELTRE from a person with the initials "L.M." and informed EMILIO LUNA that he would

send the MTCN in a text message.  Minutes later EMILIO LUNA received a text:  79279135.  A

$640 MoneyGram wire transfer corresponding to this MTCN was sent on or about August 2,

2011, from "L.M." in Columbus, Indiana to DOMINGO RAMIREZ in Caguas, Puerto Rico.

 l. <u>August 2, 2011</u>:  On or about August 2, 2011, during a telephone conversation,

defendant TRINIDAD asked EMILIO LUNA whether EMILIO LUNA had placed an order.

Defendant EMILIO LUNA indicated that he had requested that his source start looking, but

indicated that it was necessary to send a deposit.  TRINIDAD stated that he would bring money

to EMILIO LUNA soon.  Later that same day, defendant TRINIDAD sent a text message to

EMILIO LUNA that read:  "[a certain address on] N. Gladstone Ave Columbus IN 47201", the

address to send the documents.  Less than five minutes later, defendant TRINIDAD sent another

text message to EMILIO LUNA that read: "under the name Mario Trinidad".  The following

day, EMILIO LUNA sent the following text message to JOAQUIN BELTRE:  "Pants from 35 to

37 to Mario Trinidad [a certain address on] N Gladstone Ave Columbus IN 47201",

communicating a document order on behalf of TRINIDAD.

 m. <u>August 3, 2011</u>:  On or about August 3, 2011, defendant EMILIO LUNA called

JOAQUIN BELTRE to place another order for "skirts."  EMILIO LUNA asked how soon the

order could be processed and for a name to which to direct the payment.  Minutes later,

JOAQUIN BELTRE sent a text message to EMILIO LUNA: "Nelson. D. Leon."  Less than an

hour later, EMILIO LUNA called JOAQUIN BELTRE and gave him a MoneyGram MTCN and

said that $600 had been sent from a person with the initials "P.G." Defendants EMILIO LUNA

and JOAQUIN BELTRE reviewed the order for "pants" and "skirts" and JOAQUIN BELTRE

requested an address to which to send the documents. EMILIO LUNA clarified that the orders

were not going to the same address. Later that day, EMILIO LUNA sent a text message to

JOAQUIN BELTRE which read in substance and in part: "Skirt of 25 and pants of 25 for

['J.F.'] [at a certain address] Hawpatch Dr. Columbus, IN 27203." On or about August 9, 2011,

defendant MIGUEL GUZMAN mailed a parcel (0310 2640 0000 7565 2135) from Caguas,

addressed to "J.F." in Columbus, Indiana, which contained two Unlawful Document Sets, one for

a male, one for a female.

      n.  August 11, 2011:  On or about August 11, 2011, defendant TRINIDAD said he

could get brand new Puerto Rico birth certificates and original Social Security cards and would

sell an Unlawful Document Set to UCA-1 for $1,200.  During the conversation with UCA-1,

defendant TRINIDAD stated that he needed half the payment upfront to send to Puerto Rico and

then once the documents arrived, the second half of the payment.

      ROSA CORRAL

      o.  June 18, 2011:  On or about June 18, 2011, defendant CORRAL telephoned

JOAQUIN BELTRE to discuss a customer who was unable to obtain Indiana identification

documents with the purchased identity documents.  Defendant JOAQUIN BELTRE assured

CORRAL that he would replace them and that he would send a text message with the recipient

address for the documents.  In the same conversation, they discussed another pending order for

"skirts" and "pants."

p. <u>July 13, 2011</u>: On or about July 13, 2011, CORRAL agreed to sell CW-3 an Unlawful Document Set for $800, requiring a $400 down payment. On or about July 16, 2011, CORRAL met CW-3 at CORRAL's residence in Seymour, Indiana. During the recorded meeting, defendant CORRAL accepted the $400 down payment and gave assurances that the documents would belong to real people. Defendant CORRAL stated, in substance and in part, that she knew a man in town who could run checks on the identities to see if they have criminal records. Defendant CORRAL also represented that the document would be mailed from Puerto Rico.

q. <u>July 26 and August 1, 2011</u>: On or about July 26, 2011, JOAQUIN BELTRE caused a parcel addressed to defendant CORRAL in Seymour, Indiana to be mailed that contained one Document Set bearing the name, "L.R.P.M." On or about July 30, 2011, CORRAL signed for the parcel. On or about August 1, 2011, defendant CORRAL accepted the remaining $400 from CW-3 in exchange for the Unlawful Document Set in the name of "L.R.P.M." Defendant CORRAL stated that she would give CW-3 a two-week warranty on the documents, as that is the warranty agreement she had with her suppliers in Puerto Rico. Defendant CORRAL offered to put CW-3 in contact with an individual who could help him/her to obtain legitimate State of Indiana identification documents using the Puerto Rico identity documents.

r. <u>May and June 2011</u>: On or about May 31, 2011, JOAQUIN BELTRE caused a parcel to be mailed from Caguas to defendant CORRAL in Seymour, Indiana, containing one Unlawful Document Set in the name of an individual with the initials "G.E.F.J." On or about

June 2, 2011, that parcel was delivered to defendant CORRAL's residence in Seymour.  On or about June 7, 2011, defendant DON RICCO escorted an individual bearing these identity documents and forged supporting payroll documents to the Scottsburg, Indiana Bureau of Motor Vehicles ("BMV").  On or about June 20, 2011, a parcel listing CORRAL as the sender was mailed to Caguas.  This parcel contained the Unlawful Document Set in the name of "G.E.F.J." as well as an investigative letter from the Indiana BMV.

DON RICCO

s.  August 1, 2011:  On or about August 1, 2011, CORRAL directed CW-3 to seek DON RICCO's assistance in acquiring Indiana State identification documents.

t.  October 14, 2011:  On or about October 14, 2011, CW-3 placed a telephone call to defendant DON RICCO, seeking DON RICCO's assistance in obtaining Indiana identity documents for CW-3 and a "cousin."  Defendant DON RICCO informed CW-3 that s/he would need to bring a birth certificate, Social Security card, and documents proving Indiana residence.

u.  October 18, 2011:  Four days later, CW-3 and UCA-2 met with DON RICCO at his office in Seymour, Indiana.  CW-3 and UCA-2 were wearing audio/video recording devices and possessed identification documents and Comcast and AT&T bills bearing the names of their assumed identities.

v.  DON RICCO instructed CW-3 and UCA-2 that they were to permit defendant DON RICCO to do all of the talking on their behalf once they arrived at the BMV, stating in substance and in part, "That's why you supposedly came looking for me from so far because I know what I'm doing, you know what I mean."  On the way to the BMV, defendant DON

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 32

RICCO explained to CW-3 and UCA-2 that he is looking for someone who can manufacture

documents for him because his prior source had been arrested.  On that day, defendant DON

RICCO assisted UCA-2 in obtaining an Indiana state identity card and charged UCA-2 $200 for

the service.

## Document Trafficking Involving Caguas, Puerto Rico, Hartford, Connecticut and Aurora, Illinois

17.     In furtherance of the conspiracy, defendants BELTRE FIGUEREO, TREVINO,

and MARIA COTTO engaged in one or more of the activities set forth in paragraph 9 above,

including the following:

a.     March 20, 2008:  On or about March 20, 2008, BELTRE FIGUEREO obtained a

Connecticut identification card using the name, date of birth, and Social Security number of his

assumed Puerto Rican identity, "Wilson DeLeon."

b.     June 19, 2011:  On or about June 19, 2011, defendant TREVINO wired $500 via

Western Union to BELTRE FIGUEREO's alias, Wilson DeLeon.

c.     June 21, 2011:  On or about June 21, 2011, defendant BELTRE FIGUEREO,

using his alias Wilson DeLeon, mailed a parcel to TREVINO in Aurora, Illinois.

d.     June 29, 2011:  On or about June 29, 2011, a U.S. Mail parcel (EG 202275082

US) addressed to BELTRE FIGUEREO's alias, Wilson DeLeon, containing two Unlawful

Document Sets and two passport-style photographs, arrived at his residence in Hartford,

Connecticut.  MILDEYS BELTRE's address was listed as the sender address.

e. <u>August 8, 2011</u>:  On or about August 8, 2011, a parcel (EG 202276689 US) which contained two Unlawful Document Sets was mailed with MILDEYS BELTRE's address as the return sender and was destined for the alias of BELTRE FIGUEREO.

f. <u>August 17, 2011</u>:  On or about August 17, 2011, defendant BELTRE FIGUEREO picked up the U.S. Mail parcel (EG 202276689 US) containing two Unlawful Document Sets addressed to "Wilson DeLeon" from a U.S. Post Office in Hartford, Connecticut.

g.  Between in and about September 2009 and in and about December 2010, defendant TREVINO, using his alias "Armando Trevino," wired money via Western Union approximately seventeen times from in and around Oswego, Illinois to "J.M." in Caguas, Puerto Rico.  The wire transfers were for varying amounts between $200 and $1,000, consistent with identity document sales.

<u>TREVINO</u>

h. <u>January 2009 and January 2010</u>:  On or about January 26, 2009, defendant TREVINO (whose name is ISMAEL ALVARO LOPEZ RANGEL) obtained an Illinois identification card using the name, date of birth, and Social Security number of his assumed identity "Ricardo Omar Morales Bigas."  On or about January 20, 2010, defendant TREVINO obtained an Illinois identification card using the name, date of birth, and Social Security number of his assumed identity "Armando Trevino, Jr."

i. <u>September 22, 2011</u>:  During a telephone conversation on or about September 22, 2011 with UCA-1, defendant TREVINO admitted he possessed personal identifying information

that he could sell, but ultimately he referred UCA-1 to another person who could supply UCA-1

with the documents.

MARIA COTTO

j. <u>June 6, 2011</u>: On or about June 6, 2011, during a telephone conversation,

MARIA COTTO requested from JOAQUIN BELTRE the name in which he wanted her to send

a payment of $320 for identity documents. JOAQUIN BELTRE replied: DOMINGO A.

RAMIREZ.

k. <u>June 6, 2011</u>: According to Western Union records, on or about June 6, 2011, an

individual with the initials "J.M." from Connecticut wired $320 to "DOMINGO RAMIREZ".

l. <u>June 6, 2011</u>: Minutes after the wire transfer was made, JOAQUIN BELTRE

received a text message which included an address associated with MARIA COTTO and

instructions to send identity documents in MARIA COTTO's name.

**Document Trafficking Involving Caguas, Puerto Rico and Clewiston, Florida**

18. In furtherance of the conspiracy, defendants MANUEL RUIZ, CELESTINA

MENDEZ, WILFREDO, JUAN GABRIEL and MIGUEL GUZMAN engaged in one or more of

the activities set forth in paragraph 9 above, including the following:

a. <u>February 23, 2009</u>: On or about February 23, 2009, MANUEL RUIZ applied for

a Florida identification card using the name and birth date of his alias, "Emmanuel Ramos

Vazquez."

b. <u>June 22, 2011</u>: On or about June 22, 2011, JUAN GABRIEL mailed a parcel (EG

201157075 US) containing five Unlawful Document Sets from Caguas to MANUEL RUIZ in

Clewiston, Florida.  Defendant MANUEL RUIZ retrieved the parcel from the Post Office in

Clewiston, Florida.

     c.  August 1 and 4, 2011:  On or about August 1, 2011, a parcel (EG 861735339 US)

was mailed to defendant MANUEL RUIZ in Clewiston, Florida.  The parcel contained two

Unlawful Document Sets—one for a twenty-three-year-old and one for a twenty-five-year-old—

and one extra Puerto Rico birth certificate was mailed from Caguas, Puerto.  On or about August

4, 2011, WILFREDO confirmed that he had sent MANUEL RUIZ the Unlawful Document Sets

for the twenty-three-year-old and for the twenty-five-year-old.  MANUEL RUIZ informed

WILFREDO that he would be returning a birth certificate because the customer could not use it

due to its condition.

     d.  August 16, 2011:  On or about August 16, 2011, WILFREDO stated that he was

sending MANUEL RUIZ five Unlawful Document Sets and MANUEL RUIZ replied that he

would be sending $600 in the name of "JUAN GABRIEL" and would provide WILFREDO with

the MTCN the following day.

     e.  August 17, 2011:  On or about August 17, 2011, MANUEL RUIZ provided

WILFREDO with MTCN 7929859439.  According to Western Union records, MTCN

7929859439 corresponds to a wire transfer of $600 from "Emmanuel Ramos," the alias of

MANUEL RUIZ of Clewiston, Florida to "JUAN GABRIEL RODRIGUEZ" in Caguas.

     f.  April 12, 2011:  On or about April 12, 2011, a parcel (EG201105745US)

containing four Unlawful Document Sets was mailed by defendant MIGUEL GUZMAN.  The

parcel was addressed to CELESTINA MENDEZ at a P.O. Box in Clewiston, Florida and the

sender/return address was WILFREDO B. DIAZ in Caguas, Puerto Rico.

g. August 9, 2011: On or about August 9, 2011, CELESTINA MENDEZ asked

WILFREDO about the Social Security card she had ordered, specifying that it was not to be

signed and that it should not look as though the signature was erased. During a telephone

conversation later that day, defendant WILFREDO directed CELESTINA MENDEZ not to send

money to him in his name and defendant CELESTINA MENDEZ requested that her order be

mailed to her P.O. Box.

h. August 20, 2011: On or about August 20, 2011, defendant CELESTINA

MENDEZ provided WILFREDO with the Western Union MTCNs for two wire transfers she had

sent using her own name to JUAN GABRIEL RODRIGUEZ COLON and to an individual with

the initials "L.D.C.," each for $500.

**Document Trafficking Involving Caguas, Puerto Rico and Lilburn/Norcross, Georgia**

19. In furtherance of the conspiracy, defendants JUAN QUERO, PELAGIO, and

JOAQUIN BELTRE engaged in one or more of the activities set forth in paragraph 9 above,

including the following:

a. June 3, 2011: On or about June 3, 2011, JUAN QUERO applied for a Georgia

identification document using the name and date of birth of an alias, "Luis Gonzalez."

b. May 17, 2011: On or about May 17, 2011, JOAQUIN BELTRE and PELAGIO

discussed a document order pertaining to JUAN QUERO.

      c. July 2, 2011: During a telephone conversation on or about July 2, 2011,

defendant JUAN QUERO discussed with JOAQUIN BELTRE purchasing Unlawful Document

Sets from JOAQUIN BELTRE. Defendant JUAN QUERO represented that he wished to buy

eight Unlawful Document Sets total, but that he wanted to buy them in groups of two. JUAN

QUERO stated that before he would purchase the first Unlawful Document Set he wanted to first

obtain the identifying information in order to determine if they had criminal histories. On or

about July 2, 2011, JOAQUIN BELTRE sent text messages to JUAN QUERO containing names,

dates of birth, and Social Security numbers for two individuals.

      d. July 6, 2011: On or about July 6, 2011, during a telephone conversation, JUAN

QUERO provided JOAQUIN BELTRE with MTCN 1671379950 and "Yoshafat Ariaga Duar"

[an alias of JUAN QUERO] as the purported sender's name for an $800 payment to JOAQUIN

BELTRE. After this telephone conversation, JUAN QUERO sent a text message to JOAQUIN

BELTRE indicating that JOAQUIN BELTRE should send the two identities that JUAN QUERO

was purchasing.

## Document Trafficking Involving Caguas, Puerto Rico, Salisbury, Maryland and Columbus, Ohio

    20.   In furtherance of the conspiracy, defendants DANIEL MENDEZ, DARCIA,

ADONIS, DOMINGO, DE LA CRUZ and JOAQUIN BELTRE engaged in one or more of the

activities set forth in paragraph 9 above, including the following:

      a. April 26, 2011: On or about April 26, 2011, defendant JOAQUIN BELTRE sent

a text message which contained the Social Security number (beginning with 584) of a real person

with the initials of "G.T.R." and a certain birth date in 1980 to DANIEL MENDEZ.  That same

day, defendant DANIEL MENDEZ sent a text message which contained the Social Security

number (beginning with 584) of a real person with the initials of "G.T.R." and a certain birth

date in 1980 to a certain telephone number.

      b.  <u>May 3, 2011</u>:  On or about May 3, 2011, conspirators caused a U.S. Mail parcel

(EG 932978870 US) to be mailed from Caguas, Puerto Rico to DARCIA in Salisbury, Maryland

which contained fifteen Unlawful Document Sets and one Puerto Rico voter card.  The parcel

included identity documents for a real person with a Social Security number (beginning with

584), the initials of "G.T.R.," and a certain birth date in 1980.

      c.  <u>June 16, 2011</u>:  On or about June 16, 2011, defendant DARCIA caused a text

message to be sent to defendant JOAQUIN BELTRE that read, in Spanish, "Adonis Ramirez [at

a certain address on] Fremont St Columbus .oh 43204 two pants or two pants M."

      d.  <u>June 17, 2011</u>:  On or about June 17, 2011, defendant ADONIS wired $700 via

MoneyGram from Columbus, Ohio to defendant DOMINGO in Caguas, Puerto Rico.

      e.  <u>June 29, 2011</u>:  On or about June 29, 2011, defendant ADONIS wired $800 via

MoneyGram from Columbus, Ohio to defendant DE LA CRUZ in Caguas, Puerto Rico.

      f.  <u>July 9, 2011</u>:  On or about July 9, 2011, defendant ADONIS wired $700 via

MoneyGram from Columbus, Ohio to DE LA CRUZ in Caguas, Puerto Rico.

      g.  <u>July 9, 2011</u>:  On or about July 9, 2011, defendant DARCIA spoke with defendant

JOAQUIN BELTRE over the telephone and stated in substance and in part that her brother,

defendant ADONIS, wanted to order at least two more identity documents for twenty-nine to

thirty-year-old males.  Defendant DARCIA confirmed with JOAQUIN BELTRE that the

payment should be sent in the name of JULIO DE LA CRUZ.  Later that same evening,

defendant JOAQUIN BELTRE received a text message indicating the MoneyGram MTCN for

the $700 wire payment, that the payment was sent to DE LA CRUZ, and that the order was for

four sets of male identity documents.

       h.   <u>July 9, 2011</u>:  On the same night, defendant DARCIA and defendant JOAQUIN

BELTRE spoke again over the telephone at which time DARCIA confirmed that she would be

placing a second order.  Defendant DARCIA followed this telephone conversation by sending a

text message giving the name and address to which JOAQUIN BELTRE should send the

document order, "NAME AND ADDRESS CARLOS VALENTIN. [at the same certain address

on] FREMONT ST. COLUMBUS OH 43204".

       i.   <u>July 10, 2011</u>:  During a telephone conversation on or about July 10, 2011,

defendant JOAQUIN BELTRE instructed defendant DARCIA to wire the payment in the name

of VICTOR M. RIVERA RAMIREZ.  Defendant DARCIA indicated that she would be sending

JOAQUIN BELTRE an identity document for replacement and that she would need some

identity documents to be sent to her in Maryland instead of Columbus, Ohio.

       j.   Shortly thereafter, defendant DARCIA sent a text message to defendant

JOAQUIN BELTRE ordering particular identity documents and providing the name and address

to which to send them; it read in substance and in part, "PANTS 22M..SKIRT 30 32 33 88 24 84

87 90 ONE OF EACH AND 2 EXTRA PANTS [at a certain address on] BOOTH ST APT E

SALISBURY MD [a certain individual with the initials 'A.F.']".  Defendant JOAQUIN

BELTRE responded with a text message including the name MIGUEL GUZMAN and the

address to which the document could be returned for replacement.

k. <u>July 13 and September 9, 2011</u>:  On or about July 13, 2011, defendant ADONIS

accepted a parcel (EG 861730265 US) containing four Unlawful Document Sets addressed to [a

certain address on] Fremont St. in Columbus, Ohio.  On or about September 9, 2011, one of the

identities included in this parcel, that of an individual with the initials "M.I.C.," was issued an

Ohio identification card.

l. <u>July 14, 2011</u>:  On or about July 14, 2011, defendant DANIEL MENDEZ

described to defendant JOAQUIN BELTRE several recently trafficked identities that were not

usable by the customers.  One of these identities, an individual with the initials "A.I.R.C.," was

contained in the parcel defendant ADONIS accepted on or about July 13, 2011.

m. <u>July 15, 2011</u>:  On or about July 15, 2011, defendant ADONIS wired $700 via

MoneyGram from Columbus, Ohio to defendant DE LA CRUZ.

n. <u>July 16, 2011</u>:  On or about July 16, 2011, a parcel (EG 201093392 US)

containing eleven Unlawful Document Sets was mailed to "[a certain individual with the initials

A.F."], [at a certain address on] Booth Street, Apt. A, Salisbury, Maryland  21801" by an older

female unknown to the Grand Jury.  At the same time, a second parcel (EG 201093361 US)

containing two Unlawful Document Sets was mailed to the same address on Fremont Street,

Columbus, Ohio 43204.

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 41

## Document Trafficking Involving Caguas, Puerto Rico and Columbus, Ohio

21.    In furtherance of the conspiracy, defendants VICTOR COLON, MIGUEL

GUZMAN, and JOAQUIN BELTRE engaged in one or more of the activities set forth in

paragraph 9 above, including the following:

a.    June 2, 2011:  On or about June 2, 2011, defendant MIGUEL GUZMAN mailed a

parcel (EG 201156818 US) which contained two Unlawful Document Sets to defendant

VICTOR COLON.

b.    June 3, 2011:  On or about June 3, 2011, defendant MIGUEL GUZMAN caused a

parcel (EG 202279668 US) which contained one Unlawful Document Set to be mailed to

defendant VICTOR COLON.

c.    June 7, 2011:  On or about June 7, 2011, VICTOR COLON wired $800 via

MoneyGram from Columbus, Ohio to a person with the initials "I.B." in Caguas, Puerto Rico.

d.    June 22 and 24, 2011:  On or about June 22, 2011, defendant MIGUEL

GUZMAN mailed a parcel (EG 202275900 US) which contained two Unlawful Document Sets

and an extra birth certificate to defendant VICTOR COLON in Columbus, Ohio.  On or about

June 24, 2011, defendant VICTOR COLON accepted delivery of the parcel.  The next day,

defendant VICTOR COLON wired $800 via MoneyGram from Columbus, Ohio to "I.B." in

Caguas, Puerto Rico.

## Document Trafficking Involving Caguas, Puerto Rico and Fairfield, Ohio

22.     In furtherance of the conspiracy, defendants ALEXIS BELTRE and JOAQUIN BELTRE engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a.   <u>May 19, 2011</u>:  On or about May 19, 2011, JOAQUIN BELTRE spoke with ALEXIS BELTRE over the telephone.  During the conversation, ALEXIS BELTRE put a customer on the phone to speak with JOAQUIN BELTRE.  Defendant JOAQUIN BELTRE represented to ALEXIS BELTRE's customer in sum and substance that older looking identity documents are preferable to newer ones because they appear more authentic and they have been trafficked fewer times.  However, JOAQUIN BELTRE offered to both the customer and to ALEXIS BELTRE to exchange the identity documents for newer ones if the customer insisted.

b.   <u>May 21, 2011</u>:  On or about May 21, 2011, co-conspirators caused a U.S. Mail parcel (0310 2010 0001 3315 8642) which contained one Unlawful Document Set to be mailed from Caguas, Puerto Rico to defendant ALEXIS BELTRE.

c.   <u>July 8, 2011</u>:  On or about July 8, 2011, co-conspirators caused a U.S. Mail parcel (EG 202281065 US) which contained one Unlawful Document Set to be mailed from Caguas, Puerto Rico to defendant ALEXIS BELTRE.

d.   <u>July 27, 2011</u>:  On or about July 27, 2011, co-conspirators caused a U.S. Mail parcel (EG 201098372 US) which contained two Unlawful Document Sets to be mailed from Caguas, Puerto Rico to defendant ALEXIS BELTRE.

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 43

## Document Trafficking Involving Caguas, Puerto Rico and Dorchester, Massachusetts

23.     In furtherance of the conspiracy, defendants CESAR PIZARRO, JOAQUIN

BELTRE, and DANIEL MENDEZ engaged in one or more of the activities set forth in

paragraph 9 above, including the following:

a.   June 8, 2011:  On or about June 8, 2011, JOAQUIN BELTRE sent a text message

to DANIEL MENDEZ that contained the name, date of birth, and SSN for an individual with the

initials "A.L.O.G."

b.   June 14 and 16, 2011:  On or about June 14, 2011, co-conspirators mailed a parcel

(EG 201078157 US) containing one Unlawful Document Set (pertaining to an individual with

the initials "A.L.O.G.") in Caguas, Puerto Rico to CESAR PIZARRO in Dorchester,

Massachusetts.  On or about June 16, 2011, defendant CESAR PIZARRO signed for and

accepted this U.S. Mail parcel.

c.   August 12, 2011:  On or about August 12, 2011, defendant DANIEL MENDEZ

provided CESAR PIZARRO with a trafficked identity (including the name and Social Security

number) over the telephone.

d.   August 16, 2011:  On or about August 16, 2011, CESAR PIZARRO instructed

defendant DANIEL MENDEZ during a telephone conversation on how to sign a fraudulent

identity document that CESAR PIZARRO had previously ordered.

e.   August 18, 2011:  On or about August 18, 2011, defendants CESAR PIZARRO

and DANIEL MENDEZ reviewed the details over the telephone of a previous order for identity

documents.

<u>United States v. Rafael Joaquin Beltre Beltre et al.</u>
Indictment
Page 44

f.   <u>August 23, 2011</u>:  On or about August 23, 2011, defendant CESAR PIZARRO

informed defendant DANIEL MENDEZ during a telephone conversation that he had sent the

money for the ordered identity documents via wire transfer and it was ready for pick up.

g.   <u>August 24, 2011</u>:  On or about August 24, 2011, defendant CESAR PIZARRO

negotiated a price for an identity document with DANIEL MENDEZ.  In a separate telephone

conversation minutes later, defendant CESAR PIZARRO placed another identity document order

with DANIEL MENDEZ.

h.   <u>August 24, 2011</u>:  On or about August 24, 2011, defendant CESAR PIZARRO

informed defendant DANIEL MENDEZ that one of his customers was dissatisfied with an

identity document he had just received.  Defendant DANIEL MENDEZ offered to send CESAR

PIZARRO a replacement identity document.

i.   <u>August 25, 2011</u>:  On or about August 25, 2011, defendant CESAR PIZARRO

spoke with DANIEL MENDEZ on the phone to ask whether identity documents he had ordered

had been mailed yet.

j.   <u>August 26, 2011</u>:  On or about August 26, 2011, defendant CESAR PIZARRO

confirmed the address to which he should send a money wire payment.  Defendant DANIEL

MENDEZ corrected the address and instructed CESAR PIZARRO to direct the money to

another name with the initials "J.L.P."  Defendant CESAR PIZARRO informed DANIEL

MENDEZ that he would send a picture for use in an identity document.

## Document Trafficking Involving Caguas, Puerto Rico and Lawrence, Massachusetts

24.     In furtherance of the conspiracy, defendants CARMEN BELTRE, WARQUIN BELTRE, JOAQUIN BELTRE, and DANIEL MENDEZ engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a.   February 9, 2010:  On or about February 9, 2010, defendant WARQUIN BELTRE obtained a Rhode Island driver's license using the name and date of birth of his alias, "Damian M. Aponte."

b.   May 22, 2011:  On or about May 22, 2011, defendant JOAQUIN BELTRE sent a text message to DANIEL MENDEZ that contained the name, date of birth, and SSN for an individual with the initials "A.J.F.H."  On or about May 22, 2011, defendant DANIEL MENDEZ sent a text message to defendant CARMEN BELTRE, indicating he had the identity documents she wanted.  DANIEL MENDEZ followed up with another text message to CARMEN BELTRE which contained the name, date of birth, and SSN of an individual with the initials "A.J.F.H." and an SSN beginning with the numbers 598.  This text message relayed identifying information of the documents DANIEL MENDEZ planned to send CARMEN BELTRE.  Minutes later, defendant CARMEN BELTRE sent a text message to MENDEZ, stating, "ok."

c.   May 26, 2011:  On or about May 26, 2011, defendants CARMEN BELTRE and DANIEL MENDEZ exchanged a series of text messages regarding a document order for CARMEN BELTRE and a payment of $500.  That same day, defendant CARMEN BELTRE sent a text message to DANIEL MENDEZ which read, "Carmen Beltre, PO Box 225, Lawrence, MA 01842", indicating where the document order should be mailed.  Minutes later, CARMEN

BELTRE sent another text message to DANIEL MENDEZ, which contained the name, date of birth, and SSN of a male with the initials "A.J.F.H." and an SSN beginning with the numbers 598.

d.   June 2, 2011:  On or about June 2, 2011, at a Post Office in Lawrence, Massachusetts, defendant CARMEN BELTRE picked up a U.S. Mail parcel (EG 202279671 US) mailed from Caguas, Puerto Rico and addressed to CARMEN BELTRE at her P.O. Box in Lawrence, Massachusetts.  This parcel contained one Unlawful Document Set for a male with the initials "A.J.F.H." and an SSN beginning with the numbers 598.

e.   June 15, 2011:  On or about June 15, 2011, defendant WARQUIN BELTRE was questioned by Lawrence Massachusetts Police while waiting for mail outside a house on Cross Street in Lawrence in a vehicle bearing Rhode Island State license plates.  At that time, he presented himself as "Damian M. Aponte" and gave his address as a house on Essex Street in Lawrence.  WARQUIN BELTRE later stated that this was not his true identity and that he was waiting for a mail parcel from Puerto Rico.

f.   Inside defendant WARQUIN BELTRE's vehicle were two U.S. Treasury Internal Revenue Service ("IRS") refund checks issued to individuals with the initials "I.M.M." and "B.S.L."  Both checks were in amounts over $6,000.  Both individuals on the checks reside in Puerto Rico.  Additionally, a postal receipt for parcel number EG 201161574 US, dated June 14, 2011, was also found in defendant WARQUIN BELTRE's vehicle.  This postal receipt reflected an address on Cross Street and a return address of Caguas, Puerto Rico.  This parcel contained two Puerto Rico driver's licenses bearing the names of "I.M.M." and "B.S.L.," which match the

names found on the U.S. Treasury IRS refund checks taken from WARQUIN BELTRE's

vehicle.

       g.   Defendant WARQUIN BELTRE accepted two parcels containing identity

documents which had been mailed to his address on Essex Street, Lawrence, Massachusetts, one

on or about June 2, 2011, and the other on or about June 3, 2011.  The first parcel had been

placed in the postal stream by Mail Runner defendant MIGUEL GUZMAN.  WARQUIN

BELTRE signed for the June 2, 2011 parcel using a name that was not his own.  Defendant

WARQUIN BELTRE signed for the June 3, 2011 parcel using a different name not his own.

## Document Trafficking Involving Caguas, Puerto Rico and Lynn, Massachusets

      25.   In furtherance of the conspiracy, defendants JOAQUIN BELTRE and PELAGIO

engaged in one or more of the activities set forth in paragraph 9 above, including the following:

      a.   May 23, 2011:  On or about May 23, 2011, PELAGIO spoke with JOAQUIN

BELTRE about an identity with the initials "E.A.S."

      b.   May 23, 2011:  On or about May 23, 2011, PELAGIO met JOAQUIN BELTRE

at an address associated with JOAQUIN BELTRE and received an envelope.  Defendant

PELAGIO proceeded to a Post Office where he mailed the parcel (EG 201161512 US) which

contained one Unlawful Document Set (in the name of an individual with the initials "E.A.S.").

After mailing the parcel, which was destined for Lynn, Massachusetts, PELAGIO returned to

meet with JOAQUIN BELTRE.

<u>United States v. Rafael Joaquin Beltre Beltre et al.</u>
Indictment
Page 48

## Document Trafficking Involving Caguas, Puerto Rico and Salem, Massachusetts

26.    In furtherance of the conspiracy, defendants BENIGNO MARTINEZ and

DANIEL MENDEZ engaged in one or more of the activities set forth in paragraph 9 above,

including the following:

a.    <u>August 1, 2011</u>:  During a telephone conversation on or about August 1, 2011,

BENIGNO MARTINEZ complained to DANIEL MENDEZ about a replacement identity

document of poor quality which DANIEL MENDEZ had sent.  DANIEL MENDEZ suggested to

BENIGNO MARTINEZ that BENIGNO MARTINEZ's customer sign and laminate the card to

make its flaws less noticeable.

b.    <u>August 4, 2011</u>:  On or about August 4, 2011, BENIGNO MARTINEZ asked

DANIEL MENDEZ how long it would take to have a driver's license made for a customer.  Less

than an hour later, BENIGNO MARTINEZ, in another conversation with DANIEL MENDEZ,

discussed the process to fraudulently obtain a U.S. passport.

c.    <u>August 13, 2011</u>:  On or about August 13, 2011, BENIGNO MARTINEZ

discussed an order with DANIEL MENDEZ pertaining to two identities (one with the initials

"L.M.C.J.").

d.    <u>August 18, 2011</u>:  On or about August 18, 2011, BENIGNO MARTINEZ sent a

text message with his address on Palmer Street in Salem, Massachusetts to DANIEL MENDEZ.

On or about August 18, 2011, co-conspirators caused a U.S. mail parcel (with tracking number

EG 582174962 US) to be mailed from Puerto Rico to BENIGNO MARTINEZ at his address on

Palmer Street in Salem, Massachusetts that contained two Puerto Rico driver's licenses, one of

which was issued to an individual with the initials "L.M.C.J." at an address associated with

DANIEL MENDEZ.

  e. August 23, 2011:  During a telephone conversation on or about August 23, 2011,

BENIGNO MARTINEZ relayed a U.S. mail tracking number for a parcel that he had not yet

received from DANIEL MENDEZ: "E-G . . . five, eight, two, one, seven, four, nine, six, two. A

U and an S."

  f. September 17, 2011:  On or about September 17, 2011, defendant BENIGNO

MARTINEZ wired $295 via a MoneyGram location in Lynn, Massachusetts to an individual

with the initials "J.L.P." in Puerto Rico.

**Document Trafficking Involving Caguas, Puerto Rico and Worcester, Massachusetts**

  27. In furtherance of the conspiracy, defendants MILEDYS BELTRE, RAFAEL

RIVERA, and JOAQUIN BELTRE engaged in one or more of the activities set forth in

paragraph 9 above, including the following:

  a. February 22, 2011:  On or about February 22, 2011, RAFAEL RIVERA in

Worcester, Massachusetts wired $300 via Western Union which MILEDYS BELTRE picked

up.

  b. May 20, 2011:  On or about May 20, 2011, defendant RAFAEL RIVERA placed

an order for identity documents with JOAQUIN BELTRE over the telephone and asked in whose

name he should send payment for the identity documents.  Minutes later, defendant JOAQUIN

BELTRE sent a text message to RAFAEL RIVERA which read, "Domingo A. Ramirez." That

**United States v. Rafael Joaquin Beltre Beltre et al.**
Indictment
Page 50

same day, defendant RAFAEL RIVERA sent a text message to JOAQUIN BELTRE which read

in substance and in part, "Tomorrow or Sunday I'll send you the money and the information."

      c.  May 20, 2011:  Shortly thereafter on May 20, 2011, defendant RAFAEL

RIVERA sent a text message to JOAQUIN BELTRE which indicated that RAFAEL RIVERA

was going to place another document order, but that he was waiting for the customer to provide

him with the age needed.

      d.  May 24, 2011:  On or about May 24, 2011, defendant RAFAEL RIVERA

retrieved a parcel (0310 2010 0002 5931 2188) from his mail box outside his residence which

contained, among other things, an Unlawful Document Set and tax return documents related to

the identity of the enclosed Unlawful Document Set.  The parcel was mailed from Caguas,

Puerto Rico and was addressed to an individual with the initials "W.M.", RAFAEL RIVERA's

purported wife.

**Document Trafficking Involving Caguas, Puerto Rico and Grand Rapids, Michigan**

      28.    In furtherance of the conspiracy, defendant ALONZO RAMOS operated as an

Identity Broker in and around Grand Rapids, Michigan.  In so doing, defendant ALONZO

RAMOS engaged in one or more of the activities set forth in paragraph 9 above, including the

following:

      a.  October 5, 2007:  On or about October 5, 2007, ALONZO RAMOS applied for a

Michigan identification card using the name and date of birth of his alias, "Rafael Calderon

Virella."

b. <u>July 29, 2011</u>:  According to MoneyGram records, on or about July 29, 2011, ALONZO RAMOS PABLO wired $1,000 to an individual with the initials "L.L.A." in Caguas.

c. <u>August 6 and 9, 2011</u>:  On or about August 6, 2011, a parcel (EG 201094336 US) which contained one Unlawful Document Set and an extra birth certificate was sent from Caguas, Puerto Rico to Rafael Calderon [an alias of ALONZO RAMOS] in Grand Rapids, Michigan.  On or about August 9, 2011, the parcel was delivered to ALONZO RAMOS's address in Grand Rapids, Michigan.

d. <u>October 20, 2011</u>:  On or about October 20, 2011, ALONZO RAMOS offered to sell CW-3 an Unlawful Document Set for $750.

e. <u>October 21, 2011</u>:  On or about October 21, 2011, ALONZO RAMOS instructed CW-3 to make a $375 down payment on an Unlawful Document Set by wiring money to "Rafael Calderon" via MoneyGram.

f. <u>November 1, 2011</u>:  On or about November 1, 2011, ALONZO RAMOS accepted the $375 balance payment in exchange for an Unlawful Document Set.  Defendant ALONZO RAMOS offered to take CW-3 to Missouri to use the purchased Unlawful Document Set to obtain a state identification card in exchange for $650.

**Document Trafficking Involving Caguas, Puerto Rico and Nebraska City, Nebraska**

29.	In furtherance of the conspiracy, defendants ROJAS (previously using the legal name of Ivan Lara Rojas), WILFREDO, and JUAN GABRIEL engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a. <u>August 10, 2011</u>:  On or about August 10, 2011, defendant ROJAS started the

telephone conversation with WILFREDO by saying: "Hey, Blanco.  It's me Ivan..."  During the

conversation, ROJAS further stated in sum and substance: "Well, I am going to need two birth

certificates.  One of thirty-two and one of thirty-eight.  I need you to send me the names to put ...

to send you the dollars."  A few hours later, WILFREDO asked ROJAS for the MTCN which

ROJAS provided in addition to stating that he sent the $1,100 in his name from Nebraska.

Defendant WILFREDO stated in substance and in part that he would then give ROJAS the

identifying information to verify so that WILFREDO could be sure that the information would

work and avoid needlessly mailing documents.

b. <u>August 10, 2011</u>:  On or about August 10, 2011, a MoneyGram wire transfer was

sent from GERARDO RANGEL ROJAS in Nebraska in the amount of $1,100 to JUAN

GABRIEL RODRIGUEZ COLON in Caguas, Puerto Rico.

c. <u>August 15, 2011</u>:  On or about August 15, 2011, defendant JUAN GABRIEL

mailed a parcel (EG 861735299 US) which contained two Unlawful Document Sets to "Ivan

Rojas" in Nebraska City, Nebraska, from Caguas, Puerto Rico.

d. <u>August 18, 2011</u>:  On or about August 18, 2011, defendant WILFREDO

explained to ROJAS that parcels had been delayed because the government is bankrupt and

offered to provide ROJAS with the USPS tracking telephone number and MTCN to locate the

delayed parcel.

e. <u>June 22, 2011</u>:  On or about June 22, 2011, "Ivan Lara Rojas" of Nebraska City,

Nebraska transmitted $800 via MoneyGram to "Juan Rodriguez" in Caguas, Puerto Rico.  On or

about June 23, 2011, a parcel (EG 202276162 US) containing two Unlawful Document Sets was mailed from JUAN G. RODRIGUEZ in Caguas, Puerto Rico to Ivan Lara Rojas in Nebraska City, Nebraska.

   f. June 29, 2011:  On or about June 29, 2011, defendant JUAN GABRIEL mailed a parcel in Caguas addressed to "Ivan Lara Rojas" in Nebraska containing one Unlawful Document Set.

## Document Trafficking Involving Caguas, Puerto Rico and Elizabeth, New Jersey

   30. In furtherance of the conspiracy, defendants MARTINA MONTERO and JOAQUIN BELTRE engaged in one or more of the activities set forth in paragraph 9 above, including the following:

   a. June 1, 2011:  On or about June 1, 2011, JOAQUIN BELTRE caused the mailing of a U.S. Mail parcel (EG 201075941 US) which contained one Unlawful Document Set, to "Martha Ortiz" at P.O. Box 381 in Elizabeth, New Jersey.

   b. June 3, 2011:  On or about June 3, 2011, defendant MARTINA MONTERO telephoned JOAQUIN BELTRE inquiring about a late parcel.  MARTINA MONTERO stated in sum and substance that she had just left the Post Office and the parcel was not there.  JOAQUIN BELTRE confirmed that the parcel was sent by Express Mail and represented that lately his parcels have not been arriving on time.  JOAQUIN BELTRE stated that once he got home he would give her the USPS tracking number and suggested that MARTINA MONTERO give it to her customer so he or she would realize that MARTINA MONTERO was not lying and that the documents were on their way.

c. <u>July 11, 2011</u>:  On or about July 11, 2011, co-conspirators caused the mailing of a U.S. Mail parcel (0310 3200 0000 2799 2275) which contained one Unlawful Document Set from Caguas, Puerto Rico and addressed to "Martha Ortiz" at P.O. Box 381 in Elizabeth, New Jersey.

d. <u>August 8 and 13, 2011</u>:  On or about August 8, 2011, co-conspirators caused the mailing of a U.S. Mail parcel (EG 936986443 US) which contained one Unlawful Document Set from MILEDYS BELTRE's street address in Caguas, Puerto Rico and addressed to MARTINA MONTERO's P.O. Box in Elizabeth, New Jersey.  On or about August 13, 2011, MARTINA MONTERO presented herself at a Post Office in Elizabeth, New Jersey in order to pick up that parcel.

**Document Trafficking Involving Caguas, Puerto Rico and Burlington, North Carolina**

31.    In furtherance of the conspiracy, defendants APARICIO LARA, WILFREDO, and JUAN GABRIEL engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a. <u>June 1, 2011</u>:  On or about June 1, 2011, defendant JUAN GABRIEL caused a U.S. Mail parcel (EG 201156866 US) which contained eighteen Unlawful Document Sets and an additional Puerto Rico birth certificate to be mailed from Caguas, Puerto Rico, to a purported commercial establishment in St. Joseph, Missouri (hereinafter "Company-1").

b. <u>June 14, 2011</u>:  On or about June 14, 2011, co-conspirators unknown to the Grand Jury caused a U.S. Mail parcel (EG 903885226 US) which contained ten Unlawful Document

Sets, one Puerto Rico photo identification card, and about $4,400 in U.S. currency to be mailed

from Company-1 in St. Joseph, Missouri to defendant WILFREDO in Caguas, Puerto Rico.

### DANIEL APARICIO LARA

c. <u>June 7, 2011</u>:  On or about June 7, 2011, using his alias "Eric Rodriguez,"

APARICIO LARA caused the mailing of a U.S. Mail parcel (EH 631657323 US), which

contained four Unlawful Document Sets and $4,100 in U.S. currency, from Burlington, North

Carolina, to WILFREDO in Caguas, Puerto Rico.  On or about June 10, 2011, defendants JUAN

GABRIEL and WILFREDO picked up this U.S. Mail parcel together from a Post Office in

Caguas, Puerto Rico.

d. <u>July 15, 2011</u>:  On or about July 15, 2011, using his alias "Ramiro Lara,"

APARICIO LARA caused a U.S. Mail parcel (EI 075131322 US) to be mailed from Burlington,

North Carolina to WILFREDO in Caguas, Puerto Rico.  The parcel contained five Unlawful

Document Sets.

e. <u>August 3, 2011</u>:  On or about August 3, 2011, APARICIO LARA confirmed over

the telephone that documents mailed to North Carolina from Puerto Rico by WILFREDO had

arrived.

f. <u>August 6, 2011</u>:  On or about August 6, 2011, defendant WILFREDO instructed

APARICIO LARA to send the next payment to an individual with the first name "Lilo."  On that

day, defendant APARICIO LARA caused $3,000 to be wired via MoneyGram to a person with

the first name "Lilo."  Defendant APARICIO LARA called WILFREDO to inform him that he

had wired $3,000 to Lilo.

     g.  August 9, 2011:  On or about August 9, 2011, defendant WILFREDO instructed APARICIO LARA to wire $2,000 in JUAN GABRIEL's name and $2,000 to a certain person with the first name "Ricauris."  On that same day, defendant APARICIO LARA caused $2,000 to be wired via MoneyGram to a certain person with the first name "Ricauris."  Additionally, on or about August 9, 2011, defendant APARICIO LARA caused $2,000 to be wired via Western Union to JUAN GABRIEL RODRIGUEZ COLON.

     h.  August 11, 2011:  On or about August 11, 2011, defendant WILFREDO provided APARICIO LARA with SSNs and birth dates over the telephone.  Defendant APARICIO LARA negotiated a price for more identity information and instructed WILFREDO where to mail them.  On or about August 12, 2011, defendant WILFREDO asked APARICIO LARA over the telephone for the address because he was on his way to mail the package.

     i.  August 12 and 14, 2011:  On or about August 12, 2011 and August 13, 2011, WILFREDO told defendant APARICIO LARA to sell the documents quickly because he was in need of money.  On or about August 13, 2011, defendant WILFREDO instructed APARICIO LARA to wire the money to JUAN GABRIEL.  On or about August 14, 2011, APARICIO LARA caused $2,000 to be sent to JUAN GABRIEL through an individual in Missouri.

**Document Trafficking Involving Caguas, Puerto Rico and Hickory, North Carolina**

     32.    In furtherance of the conspiracy, ANGEL HUERTAS, JUAN GABRIEL, and WILFREDO engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a. <u>June 7, 2011</u>:  On or about June 7, 2011, a parcel (EG 201156835 US) which was addressed to ANGEL HUERTAS in Hickory, North Carolina was mailed from a Post Office in Caguas, Puerto Rico.  The parcel contained five Unlawful Document Sets and an extra birth certificate.

b. <u>June 29, 2011</u>:  On or about June 29, 2011, JUAN GABRIEL mailed an Express Mail parcel (EG 201157036 US) at a Post Office in Caguas that was addressed to ANGEL HUERTAS.  The parcel contained six Unlawful Document Sets.

c. <u>July 26 and August 15, 2011</u>:  On or about July 26, 2011, a parcel (EM 552241592 US) containing six Unlawful Document Sets and addressed to "Angel Huertas" in Hickory, North Carolina was mailed from Caguas.  On or about August 15, 2011, during a telephone conversation, defendant WILFREDO recited to ANGEL HUERTAS the parcel tracking number associated with the parcel mailed on July 26th.

d. <u>August 19, 2011</u>:  On or about August 19, 2011, defendant WILFREDO informed ANGEL HUERTAS that he had sent ANGEL HUERTAS eighteen Unlawful Document Sets in three different parcels.

**Document Trafficking Involving Caguas, Puerto Rico and Hazleton, Pennsylvania**

33.    In furtherance of the conspiracy, defendants ORLANDO, JOAQUIN BELTRE, and PINEDA engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a. <u>May 25, 2011</u>:  On or about May 25, 2011, ORLANDO accepted and signed (but not in his true name) for delivery of a parcel addressed to "Jose Santiago" in Hazleton,

57

Pennsylvania with a return address in Caguas, Puerto Rico. The parcel contained two Puerto Rico birth certificates for the same person, but issued on different dates.

     b. <u>July 11, 2011</u>: On or about July 11, 2011, PINEDA stated to JOAQUIN BELTRE in sum and substance that the last order of documents she received from JOAQUIN BELTRE were not usable by her customer. She stated that one of the identities already had a driver's license. JOAQUIN BELTRE told her that they would take care of it.

     c. <u>July 14, 2011</u>: On or about July 14, 2011, ORLANDO caused a parcel (EG 866007054 US) to be mailed to PINEDA in Caguas, Puerto Rico with a sender/return address of "Jose Santiago" in Hazleton, Pennsylvania. The parcel contained one Unlawful Document Set.

     d. <u>July 19 and 20, 2011</u>: On or about July 19, 2011, an individual with the initials "J.R.D." with an address in Hazleton, Pennsylvania wired $450 via MoneyGram from Hazleton, Pennsylvania to PINEDA in Caguas. On or about July 20, 2011, a parcel (EG 567891311 US) addressed to "Jose Santiago" in Hazleton, Pennsylvania was mailed from Caguas. The parcel contained two Unlawful Document Sets. On or about July 22, 2011, ORLANDO signed (not in his true name) for delivery of this parcel in the name "Jose Santiago".

**Document Trafficking Involving Caguas, Puerto Rico and Philadelphia, Pennsylvania**

     34.    In furtherance of the conspiracy, defendants ARELIS ABREU, ANGEL LUGO, LUIS RODRIGUEZ, VICTOR RIVERA, DOMINGO, MIGUEL GUZMAN and JOAQUIN BELTRE engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a.  June 7 and 12, 2011:  On or about June 7, 2011, a parcel (EG 202280198 US) was

mailed by defendant MIGUEL GUZMAN from Caguas, Puerto Rico to an address associated

with ARELIS ABREU in Philadelphia, Pennsylvania.  The parcel contained one Puerto Rico

driver's license in the name of an individual with the initials "H.P.A.," one photograph depicting

a Hispanic male, and one handwritten note containing biographical information.  On or about

July 12, 2011, Cooperating Customer-2 ("CC-2") attempted to pick up a U.S. passport that

he/she had applied for in the name of "H.P.A."  CC-2 possessed a fraudulent Puerto Rico

driver's license in the name of "H.P.A." with a photograph that matched CC-2.  It was the same

license as the one mailed by MIGUEL GUZMAN on or about June 7, 2011.

b.  July 5 and 6, 2011:  On or about July 5, 2011, ARELIS ABREU informed

JOAQUIN BELTRE in substance and in part that she would be getting a photograph from a

person and that JOAQUIN BELTRE should text message her with an address of where to send it.

The same day, JOAQUIN BELTRE sent a text message to ARELIS ABREU with the address

and the addressee, DOMINGO RAMIREZ.  On or about July 6, 2011, a parcel (EG 679576385

US) was mailed from Philadelphia to DOMINGO RAMIREZ in Caguas, Puerto Rico which

contained one Unlawful Document Set and two sets of passport-style photos of Hispanic males

with personal biographical information.

c.  July 11 and 13, 2011:  On or about July 11, 2011, during a telephone

conversation, defendant ARELIS ABREU (going by the alias of "Kathy") told CW-4 that an

Unlawful Document Set would cost $650.  On or about July 13, 2011, in Philadelphia,

Pennsylvania, ARELIS ABREU and ANGEL LUGO met with CW-4 inside of ANGEL LUGO's

<u>**United States v. Rafael Joaquin Beltre Beltre et al.**</u>
Indictment
Page 60

vehicle. Defendants ARELIS ABREU and ANGEL LUGO explained the process for obtaining

the identity documents to CW-4 and ARELIS ABREU stated in sum and substance that she

could provide CW-4 with a fraudulent Puerto Rico driver's license and an Unlawful Document

Set. Defendant ARELIS ABREU instructed CW-4 to provide her with a passport-style

photograph and biographical information such as height and weight for the purpose of

manufacturing the Puerto Rico driver's license. Defendant ARELIS ABREU also stated that the

identity documents would arrive in about two days after she received the money.

      d.  <u>July 18 and August 2, 2011</u>:  On or about July 18, 2011, defendant ARELIS

ABREU instructed CW-4 to make arrangements to meet with an individual named "Ralph" (later

identified as LUIS RODRIGUEZ) to pay for the identity documents.  LUIS RODRIGUEZ and

CW-4 met on a street corner in Philadelphia and LUIS RODRIGUEZ received $650,

biographical information, and two passport-style photographs from CW-4.  During a telephone

conversation on or about July 27, 2011, defendant ARELIS ABREU clarified that the Unlawful

Document Set cost $650 and that the driver's license would cost an additional $1,200.  On or

about August 2, 2011, a parcel (EG 201098409 US) containing two Unlawful Document Sets

and a Puerto Rico driver's license were mailed from Caguas, Puerto Rico to an address

associated with ARELIS ABREU in Philadelphia, Pennsylvania.  The driver's license bore the

photograph CW-4 had supplied to LUIS RODRIGUEZ on or about July 18, 2011.

      e.  <u>August 4 and 6, 2011</u>:  On or about August 4, 2011, ARELIS ABREU told UCA-

4 that $900 of the remaining $1,200 still owed for CW-4's documents should be wired to Puerto

Rico via MoneyGram, specifically to "VICTOR MANUEL RIVERA RAMIREZ."  ARELIS

ABREU instructed UCA-4 that any name could be used as the sender's name, not necessarily his/her name. On or about August 6, 2011, in Pennsylvania, UCA-4 wired $500 to "VICTOR MANUEL RIVERA RAMIREZ" using MoneyGram. Later, UCA-4 wired $400 to "VICTOR MANUEL RIVERA RAMIREZ" using MoneyGram.

      f.   August 6, 2011: On or about August 6, 2011, UCA-4 gave ARELIS ABREU the MTCNs for the wire transactions. On or about August 8, 2011, CW-4 at the direction of ARELIS ABREU met with LUIS RODRIGUEZ who gave him/her the Puerto Rico driver's license and Unlawful Document Set. LUIS RODRIGUEZ instructed him/her to learn the signature on the driver's license.

**Document Trafficking Involving Caguas, Puerto Rico and Houston, Texas**

    35.    In furtherance of the conspiracy, defendants MILEDYS BELTRE, JOSE PAVON, JOAQUIN BELTRE, and DERYEL CAMARA engaged in one or more of the activities set forth in paragraph 9 above, including the following:

JOSE PAVON

      a.   March 15, 2011: On March 15, 2011, an individual with the initials "M.L.," who is a Money Runner used by JOSE PAVON, wired $400 from Houston, Texas to Puerto Rico, which was picked up by MILEDYS BELTRE.

      b.   May 24, 2011: On or about May 24, 2011, defendant JOSE PAVON caused a text message to be sent to JOAQUIN BELTRE which read, "BROTHER, I'M GOING TO WANT ONE". Minutes later, defendant JOAQUIN BELTRE caused a text message to be sent to JOSE PAVON which read, "OK". Defendant JOSE PAVON followed with a text message to

JOAQUIN BELTRE which read, "SEND ME A NAME". Defendant JOAQUIN BELTRE

responded with a text message that included a name with the initials "K.M.C." Defendant JOSE

PAVON caused a message to be written to JOAQUIN BELTRE which read, "A 45. GET IT

FOR ME AND I WILL SEND YOU THE REQUEST LATER".

  c. May 25, 2011:  During a telephone conversation on or about the following day,

JOAQUIN BELTRE informed defendant JOSE PAVON that he had sent JOSE PAVON identity

documents.  Defendant JOAQUIN BELTRE asked JOSE PAVON to send him the MTCN so

that JOAQUIN BELTRE could pick up the payment.  Minutes later, defendant JOAQUIN

BELTRE received a text message from JOSE PAVON that read: "350 416 8726 SENT BY [a

person with the initials "M.L."] FROM HOUSTON, TX".

  d. May 24, 2011:  On or about May 24, 2011, a person with the initials "M.L." in

Houston, Texas wired $400 via Western Union to DOMINGO RAMIREZ in Caguas, Puerto.

  e. May 25, 2011:  On or about May 25, 2011, a Mail Runner delivered a U.S. Mail

parcel (EG 202274864 US), which contained one Unlawful Document Set that matched the

specifications of the order placed by JOSE PAVON, to a Caguas Post Office to be mailed to

JOSE PAVON in Houston, Texas.

  f. September 23, 2011:  On or about September 23, 2011, JOSE PAVON met with

UCA-3 to sell UCA-3 two Unlawful Document Sets.  Defendant JOSE PAVON collected $2,400

from UCA-3 for the purchase of the Unlawful Document Sets and informed UCA-3 to expect

delivery of the Unlawful Document Sets on or about September 29, 2011.

United States v. Rafael Joaquin Beltre Beltre et al.
Indictment
Page 63

### DERYEL CAMARA

g. <u>August 1, 2011</u>:  On or about August 1, 2011, DERYEL CAMARA informed a Savarona Supplier unknown to the Grand Jury ("Supplier-1") of a MoneyGram MTCN and stated he would text the name of the person who sent the wire transfer.  Later that day, DERYEL CAMARA confirmed that the wire transfer was sent from Houston, Texas, in his name and in the amount of $800.   According to MoneyGram records, MTCN 94608831 was sent by DERYEL CAMARA in Houston to a person with the initials "R.C.T." in Puerto Rico.

h. <u>August 2, 2011</u>:  On or about August 2, 2011, DERYEL CAMARA confirmed that Supplier-1 had received the payment and had mailed the identity documents.  On or about August 4, 2011, DERYEL CAMARA confirmed the person's age for the identity documents DERYEL CAMARA had previously requested, and clarified that he wanted documents relating to ages between twenty-six and thirty-two.

i. <u>August 5, 2011</u>:  On or about August 5, 2011, DERYEL CAMARA acknowledged to Supplier-1 that he still needed a "skirt."

j. <u>August 15, 2011</u>:  On or about August 15, 2011, in a telephone conversation with Supplier-1, DERYEL CAMARA complained that the identifying information on the Unlawful Document Set he received did not match, and that the Social Security card was "false."

**Document Trafficking Involving Caguas, Puerto Rico and Abingdon, Virginia**

36.     In furtherance of the conspiracy, defendants WILFREDO, JUAN GABRIEL, and JUAN REYES engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a. <u>September 21 and 26, 2011</u>: On or about September 21, 2011, WILFREDO and JUAN GABRIEL caused a U.S. Mail parcel (EI 177699745 US) to be mailed from Puerto Rico to an address associated with JUAN REYES in Abingdon, Virginia that contained one Unlawful Document Set for a male and a Puerto Rico birth certificate for a female. On or about September 26, 2011, an associate of JUAN REYES received and signed for this parcel at the address associated with JUAN REYES in Abingdon, Virginia.

b. <u>November and December 2011</u>: On or about November 28, 2011, in a recorded phone call, JUAN REYES agreed to sell Puerto Rico identity documents to CW-5 for $600. During the phone call, JUAN REYES explained in substance and in part that CW-5 could use the identity documents to obtain an identification document from the State of Missouri. On or about November 30, 2011, CW-5 paid JUAN REYES the $600 for the Puerto Rico documents. On or about December 13, 2011, conspirators caused a U.S. Mail parcel (EI 108702121 US) to be mailed from Puerto Rico to the Abingdon, Virginia address associated with JUAN REYES (for arrival on December 15, 2011). On or about December 16, 2011, JUAN REYES told CW-5 that the documents were ready to be picked up. On or about December 21, 2011, JUAN REYES provided the Puerto Rico identity documents to CW-5.

**Document Trafficking In and Around Caguas, Puerto Rico**

37. In furtherance of the conspiracy, JOAQUIN BELTRE and WILFREDO primarily operated in Caguas, Puerto Rico and engaged in one or more of the activities set forth in paragraph 9 above, including the following:

a. June 16 and 20, 2011: On or about June 16, 2011, a U.S. Express Mail parcel (EG 201078188 US) was mailed from Caguas, Puerto Rico to Houston, Texas containing one Unlawful Document Set in the name of an individual with the initials "L.J.B.M." On or about June 20, 2011, JOAQUIN BELTRE sent a text message to Supplier-1 providing the parcel number (EG 201078188 US) and name of the purported sender, "Ramona Micolta."

b. June 21, 2011: On or about June 21, 2011, defendant JOAQUIN BELTRE called the USPS parcel tracking number in order to check the status of the delivery of the parcel (EG 201078188 US). During the telephone conversation, JOAQUIN BELTRE stated in substance and in part that he had mailed said parcel, that his name was "Ramon Micolta," and that magazines were enclosed in the parcel.

c. September 22, 2011: On or about September 22, 2011, an individual with the initials "L.J.B.M." and the same Houston, Texas address referenced in paragraph 37-a applied for a Texas identification card and presented the same Unlawful Document Set that JOAQUIN BELTRE caused to be mailed to Houston, Texas from Caguas, Puerto Rico on or about June 16, 2011.

d. May 20, 2011: On or about May 20, 2011, defendants WILFREDO and JOAQUIN BELTRE discussed purchasing identity documents from their suppliers at an inflated price. They discussed in substance and in part that if they have to raise the price of their identity documents, they would agree on the sale price for their respective document traffickers. Later that day, defendants WILFREDO and JOAQUIN BELTRE confirmed this agreement via text

<u>United States v. Rafael Joaquin Beltre Beltre et al.</u>
Indictment
Page 66

message.

(All in violation of Title 18, United States Code, Section 1028(f), (b)(1)(A) & (B), (b)(5), and (c)(1) & (3).)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2, Federal Rule of Criminal Procedure, the defendants are notified that upon conviction of Count One of this Indictment, they shall forfeit the property described below.

1.      The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated by reference as though fully set forth herein.

2.      All defendants convicted of Count One shall forfeit to the United States of America: (a) any property constituting or derived from proceeds the person obtained directly or indirectly as the result of such violation and all illicit authentication features, identification documents, document-making implements, or means of identification; (b) any personal property used or intended to be used to commit the offense.

3.      If any of the property described above, as a result of any act or omission of the defendants:

      a.      cannot be located upon the exercise of due diligence;

      b.      has been transferred or sold to, or deposited with, a third party;

      c.      has been placed beyond the jurisdiction of the court;

      d.      has been substantially diminished in value; or

      e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to, and shall pursue, forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by

**United States v. Rafael Joaquin Beltre Beltre et al.**
Indictment
Page 68

Title 18, United States Code, Sections 982(b)(1) and 1028(g) and Title 28, United States Code,

Section 2461(c).

(In accordance with Title 18, United States Code, Section 982(a)(2)(B), Section 1028(b)(5) and (h); Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and 1028(g) and Title 28, United States Code, Section 2461(c).)

<u>United States v. Rafael Joaquin Beltre Beltre et al.</u>
Indictment
Page 69

TRUE BILL

Foreperson
Date: December 29, 2011

ROSA E. RODRÍGUEZ-VÉLEZ
United States Attorney

By:

José Ruíz-Santiago
Chief, Criminal Division

LANNY A. BREUER
Assistant Attorney General
U.S. Department of Justice
Criminal Division

By:

James S. Yoon
Hope S. Olds
Sarah Chang
Courtney B. Schaefer
Trial Attorneys
U.S. Department of Justice
Criminal Division
Human Rights and Special Prosecutions Section